IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INJECTIVE LABS INC., <br><br>    Plaintiff, <br><br>vs. <br><br>XIN WANG, <br><br>    Defendant. | Civil Action No.: <br><br>**JURY TRIAL DEMANDED** |

COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Injective Labs Inc. ("Injective Labs"), for its Complaint for a Declaratory Judgment against Defendant Xin Wang ("Defendant"), states as follows:

PRELIMINARY STATEMENT

1. Injective Labs commences this action for a declaratory judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, seeking a declaration that the maximum obligation Injective Labs owes Defendant is 444,444.44 INJ tokens (INJ is a blockchain-based digital token), subject to Defendant's willingness to comply with conditions precedent including the Anti-Money Laundering ("AML") and Know Your Customer ("KYC") requirements under two Simple Agreements for Future Tokens ("SAFTs") to which the parties are signatories.

2. Defendant, an early investor in Injective Labs, has incorrectly claimed that Injective Labs wrongfully retained possession of Defendant's INJ tokens by refusing to release INJ tokens to Defendant that Defendant claims he is owed under the two SAFTs and a Consulting Agreement to which Defendant and Injective Labs are signatories. Defendant has also publicly threatened and

1

disparaged INJ and its founders in an attempt to shake down Injective Labs for remuneration to which Defendant is not entitled.

3.  Specifically, Defendant has wrongfully claimed that Injective Labs has breached the SAFTs by failing to release INJ tokens to Defendant and that Injective Labs has breached the Consulting Agreement under which Defendant claims entitlement to significant remuneration. Based on these falsehoods, and clouded by greed, Defendant has threatened to sue Injective Labs and its principals for amounts well in excess of any amounts to which Defendant might conceivably be entitled to and refused to accept the tokens to which he is entitled.

4.  Defendant's contentions could not be farther from the truth.  In reality, Defendant, not Injective Labs, has breached the SAFTs by refusing to complete and deliver AML and KYC forms requested by Injective Labs, and by attempting to resell INJ tokens during the restricted and lockup periods specified in the SAFTs, which prohibited resale.  Due to Defendant's failure to comply with the AML and KYC requirements, which are a condition precedent to the delivery of INJ tokens to Defendant, and Defendant's attempt to resell INJ tokens during the restricted and lockup periods, Injective Labs is not required to deliver INJ tokens to Defendant.  Regarding the Consulting Agreement, Defendant did no work under the Consulting Agreement and Injective Labs terminated the Consulting Agreement by letter in August 2021.  As a result, the Consulting Agreement is no longer in force.

**PARTIES**

5.  Plaintiff Injective Labs Inc. is a Delaware corporation with its principal place of business in Dublin, California.

6.  Upon information and belief, Defendant Xin Wang is an individual who is a citizen of China and resident of Australia.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states, Injective Labs is not a citizen of the same state as Defendant, and the amount in controversy is greater than $75,000 exclusive of costs and interest.

8. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine any California state law claims arising from the Consulting Agreement because any such claims arise out of a common nucleus of operative facts raised herein.

9. This Court has personal jurisdiction over Defendant in this jurisdiction because the claims at issue arise out of claimed breaches of contracts entered into in Delaware with a Delaware corporation (Injective Labs). Further, the SAFTs that give rise to this action contain an express forum selection clause which states: "This SAFT, and all rights and obligations hereunder, will be governed by and construed in accordance with the laws of Delaware, without regard to the conflicts of law provisions of such jurisdiction, and the federal courts of the Delaware shall have exclusive jurisdiction to settle any dispute arising in connection with this SAFT."

10. Venue lies in this district under 28 U.S.C. § 1391 because Injective Labs is a Delaware corporation.

**STATEMENT OF FACTS**

11. Injective Labs is a research and development company focused on creating blockchain-based decentralized finance ("DeFi") solutions for financial markets.

12. Defendant was an early investor in Injective Labs. Defendant and Injective Labs signed two "Simple Agreement for Future Tokens" dated April 1, 2020 and April 20, 2020, and a Consulting Agreement dated December 13, 2019.

13. There were no modifications to the SAFTs or to the Consulting Agreement.

14. The SAFTs were only made available to non-U.S. persons. Pursuant to the SAFTs, in exchange for payments totaling $80,000, Defendant received the right to a certain number of INJ tokens if and when they were issued.

15. Each of the SAFTs contain a forum selection clause which state:

> This SAFT, and all rights and obligations hereunder, will be governed by and construed in accordance with the laws of Delaware, without regard to the conflicts of law provisions of such jurisdiction, and the federal courts of the Delaware shall have exclusive jurisdiction to settle any dispute arising in connection with this SAFT.

16. The SAFTs gave Defendant the right to receive INJ tokens in the event of a "Qualifying Token Sale," which is defined as "the first to occur of (i) a Primary Listing, and (ii) a Token Sale to Outside Investors.

17. Using a formula set forth in the SAFTs, subject to Defendant satisfying conditions precedent identified in Section 1(b)(ii) of the SAFTs, Defendant was entitled to receive 444,444.44 INJ tokens. Defendant has already received 133,333.333 INJ tokens from Injective Labs under the SAFTs. Upon information and belief, Defendant does not dispute this calculation.

18. Section 1(b)(ii) of the SAFTs states:

> (ii) *Conditions to Delivery*. Prior to, and as a condition to the delivery of Tokens by the Token Issuer to the Investor pursuant to Section 1(b)(i):
>
> > (i) the Investor will execute and deliver to the Company any and all other transaction documents related to the Investor's participation in the Qualifying Token Sale, this SAFT, and the delivery of Tokens as are reasonably requested by the Company (the "**Token Sale Documents**");
> >
> > (ii) the Investor will provide to the Company a network address to which Investor's Tokens will be sent;
> >
> > (iii) the Investor shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and

>documents, as the Company may reasonably request in order to carry out the intent and accomplish the purposes of Section 5 hereof and/or as may be requested to comply with then applicable laws and regulations; and
>
>(iv) the Investor will complete and deliver all AML and KYC Forms requested by the Company.

19. Completing and delivering AML and KYC forms requested by Injective Labs is a condition precedent for the delivery of INJ tokens by Injective Labs to Defendant under SAFTs § 1(b)(ii)(iv).

20. Defendant has refused to complete and deliver AML and KYC forms requested by Injective Labs as required by SAFTs § 1(b)(ii)(iv). Because of Defendant's failure to comply with this requirement, Injective Labs was unable to deliver Defendant's initial tranche of 133,333.333 INJ tokens directly to Defendant, but agreed to transfer the tokens through a compliant process to an intermediary, which dealt directly with Defendant.

21. Upon information and belief, Defendant further violated the express terms of Sections 4(b)(ii) and 5(b) of the SAFTs by attempting to resell INJ tokens during the restricted and lockup periods specified in the SAFTs.

22. Section 4(b)(ii) of the SAFTs states:

>(ii) The Investor will not, during the restricted period applicable to the relevant instrument in the legend set forth below (the "*Restricted Period*") offer or sell any of this SAFT, the Future Token Rights, or any Tokens issuable pursuant thereto (or create or maintain any derivative position equivalent thereto) in the United States, to or for the account or benefit of a U.S. Person or other than in accordance with Regulation S.

23. Section 5(b) of the SAFTs states:

>(b) *Lockup*. The Investor agrees that it will not Transfer any Restricted Interests, any options to purchase any Restricted Interests, or any instruments convertible into, exchangeable for, or that represent the right to receive Restricted Interests, including the

Future Token Rights acquired herein, whether now or hereinafter acquired by the Investor, unless such Transfer is in accordance with the release schedule set forth below (each such date, respectively, a "***Release Date***"):

i. 33% of the Restricted Interests shall be released from the Lockup restrictions set forth in Section 5(a) on the six (6) month anniversary of the Qualifying Token Sale;

ii. 33% of the Restricted Interests shall be released from the Lockup restrictions set forth in Section 5(a) on the nine (9) month anniversary of the Qualifying Token Sale; and

iii. 34% of the Restricted Interests shall be released from the Lockup restrictions set forth in Section 5(a) on the one (1) year anniversary of the Qualifying Token Sale.

24. By attempting to resell INJ tokens during the restricted and lockup periods, Defendant has forfeited any future right to receive INJ tokens under the SAFTs.

25. Based on Defendant's failure to comply with the AML and KYC requirements and Defendant's attempt to resell INJ tokens during the restricted and lockup periods, Injective Labs is not required to deliver INJ tokens to Defendant under the SAFTs.

26. The Consulting Agreement described services Defendant promised to provide and the remuneration Defendant would receive for those services.

27. Section 2 of Exhibit A to the Consulting Agreement sets forth the sole remuneration Defendant would be entitled to receive under the Consulting Agreement:

2. **Payment Terms**

As sole and exclusive compensation for the Services provided herein, the Company shall procure from the Token Issuer Advisor's right to purchase 8,000,000 Tokens ("***Advisor Tokens***") from the Token Issuer. Advisor shall not sell, offer to sell, loan, grant any option for the purchase of, make any short sale, or otherwise dispose of any Advisor Tokens until the date that is 6 months after the bona fide release of the Tokens to the general public, as determined by the Token Issuer in its sole discretion. In connection with the issuance of Advisor Tokens, the Advisor will execute and deliver to the Token Issuer all transaction documents related to such purchase

of Advisor Tokens, provided that such transaction documents are the same forms of documents to be entered into with other purchasers with appropriate variations to account for the terms herein. If the Advisor fails to deliver such documents, the Token Issuer may hold the Advisor Tokens in escrow, and such escrow will constitute issuance of the Advisor Tokens in accordance with this agreement notwithstanding that such Advisor Tokens remain in escrow.

28. Under the express terms of the Consulting Agreement, the sole and exclusive compensation Defendant would be entitled to receive for his services would be for Injective Labs to procure Defendant's right to purchase 8,000,000 INJ tokens.  This means Defendant, not Injective Labs, would need to purchase the INJ tokens if Defendant were entitled to compensation under the Consulting Agreement.

29. Defendant did no work under the Consulting Agreement and Injective Labs terminated the Consulting Agreement by letter in August 2021.  Accordingly, the Consulting Agreement is no longer in force.

30. Notwithstanding Defendant's refusal to comply with the terms of the SAFTs and the termination of the Consulting Agreement, Defendant has wrongfully complained that Injective Labs has delayed release of additional INJ tokens to Defendant.

31. On February 18, 2022, Defendant, through counsel, sent Injective Labs a demand letter.  In the letter, Defendant demanded 311,111.111 INJ tokens pursuant to the SAFTs and claimed that Injective Labs' failure to release INJ tokens to Defendant breached the SAFTs and the Consulting Agreement.  Further, Defendant claimed Injective Labs violated California Penal Code § 496 which authorizes Defendant to sue Injective Labs and its principals and recover treble damages which amount to $12,890,266.66.

32. In subsequent communications with Defendant's counsel, Defendant wrongfully claimed a right to significant remuneration under the Consulting Agreement, which Defendant claimed Injective Labs has breached.

33. To make matters worse, Defendant has acted unprofessionally by publicly threatening and disparaging INJ and its founders. Defendant transmitted an email which lied about Injective Labs to dozens of prominent individuals in the crypto ecosystem, including high profile investors.

34. As Injective Labs explained in its February 25, 2022 letter to Defendant, which responded to Defendant's February 18, 2022 demand letter, Defendant's contentions are meritless.

35. It is Defendant, not Injective Labs, who has breached the SAFTs by refusing to complete and deliver AML and KYC forms requested by Injective Labs, and by attempting to resell INJ tokens during the restricted and lockup periods. Because Defendant failed to comply with the AML and KYC requirements and Defendant attempted to resell INJ tokens during the restricted and lockup periods, Injective Labs is not required to deliver INJ tokens to Defendant.

36. Further, there was no breach of the Consulting Agreement. As described herein, Defendant did no work under the Consulting Agreement and Injective Labs terminated the Consulting Agreement by letter in August 2021. The Consulting Agreement is no longer in force.

37. Plainly, Defendant is attempting to shake down Injective Labs for remuneration to which Defendant is not entitled.

38. On July 12, 2022, Injective Labs and Defendant participated in a mediation to attempt to resolve this matter without the need for litigation, but a resolution was not reached.

## CAUSE OF ACTION

### DECLARATORY JUDGMENT: 28 U.S.C. § 2201, *et seq.*

39. Injective Labs repeats and realleges all allegations above as if fully set forth herein.

40. Completing and delivering AML and KYC forms requested by Injective Labs is a condition precedent for the delivery of INJ tokens by Injective Labs to Defendant pursuant to SAFTs § 1(b)(ii)(iv).

41. Defendant has refused to complete and deliver AML and KYC forms requested by Injective Labs.

42. Sections 4(b)(ii) and 5(b) of SAFTs prohibit Defendant from attempting to resell INJ tokens during the restricted and lockup periods.

43. Upon information and belief, Defendant has attempted to resell INJ tokens during the restricted and lockup periods.

44. Because Defendant failed to comply with the AML and KYC requirements and Defendant attempted to resell INJ tokens during the restricted and lockup periods, Injective Labs is not required to deliver INJ tokens to Defendant.

45. Under the express terms of the Consulting Agreement, Injective Labs would not be obligated to purchase any INJ tokens for Defendant, but would simply be required to procure the Defendant's right to purchase 8,000,000 INJ tokens.

46. Defendant did no work under the Consulting Agreement.

47. Injective Labs terminated the Consulting Agreement by letter in August 2021.

48. The Consulting Agreement is no longer in force.

49. Defendant is not entitled to payment by Injective Labs under the Consulting Agreement.

50. There is an actual and justiciable controversy between the parties about the obligations of Injective Labs to Defendant under the SAFTs and the Consulting Agreement.

51. This Court has the power under the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under the contracts described above and herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Injective Labs Inc. seeks the following relief:

1. Declaratory judgment, pursuant to 28 U.S.C. § 2201, *et seq.*, declaring that:

   a. The maximum obligation Injective Labs owes Defendant is 444,444.44 INJ tokens, subject to Defendant's willingness to comply with the conditions precedent in the SAFTs, including the AML and KYC requirement;

   b. Injective Labs is not obligated to deliver INJ tokens to Defendant under the SAFTs if Defendant resold INJ tokens during either the restricted or lockup periods;

   c. Injective Labs owes Defendant nothing under the Consulting Agreement;

   d. Injective Labs is entitled to its costs and fees incurred herein; and

2. Such other and further relief as the Court deems just and proper.

Dated: July 18, 2022                            Respectfully submitted,

                                                **BUCHANAN INGERSOLL &
                                                ROONEY PC**

                                        By:    /s/ *Kody M. Sparks*
                                               Geoffrey G. Grivner (#4711)
                                               Kody M. Sparks (#6464)
                                               500 Delaware Avenue, Suite 720
                                               Wilmington, DE 19801
                                               Telephone: (302) 552-4202
                                               Facsimile: (302) 552-4295
                                               Email: *geoffrey.grivner@bipc.com*
                                               Email: *kody.sparks@bipc.com*

**OF COUNSEL:**

Stephen Palley, Esq.
(pro hac vice motion forthcoming)
ANDERSON KILL P.C.
1717 Pennsylvania Avenue NW, Suite 200
Washington, DC 20006
Telephone: (202) 416-6552
Email: *spalley@andersonkill.com*

*Attorneys for Plaintiff Injective Labs Inc.*