IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XIN WANG, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 22-943 |
| INJECTIVE LABS INC. and ZHONGHAN "ERIC" CHEN, | § § § § | |
| *Defendants*. | § § | |

**MEMORANDUM OPINION AND ORDER**

Defendants Injective Labs Inc. and Mr. Chen (collectively, "Injective") have moved to exclude the rebuttal report submitted by Mr. Wang's expert, Timothy McKenna. For the reasons set forth below, the motion is granted in part.

Opening expert reports were due in this matter on December 6, 2024. On that day, Injective submitted two expert reports, one of which was a report from its damages expert, Dr. Frank Risler. Mr. Wang submitted one expert report from Mary Lewis regarding standard industry practices related to tokens. Rebuttal expert reports were due on January 24, 2025. On that day, Mr. Wang submitted a report from its expert Timothy McKenna. That report was labeled "rebuttal report" and stated that it contained "expert opinions regarding those expressed by Dr. Risler in his expert report" and "alternative damage calculations to those provided by Dr. Risler." Dkt. No. 132, Ex. 1 ¶ 1. Injective now argues that Mr. McKenna's report constitutes an untimely initial expert report and that the report and any trial testimony based on the report should be excluded.

Federal Rule of Civil Procedure 26(a)(2) governs expert disclosures. It requires that experts submit a report that contains "a complete statement of all opinions the witness will express and the

1

basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). After initial reports are filed, the rule permits the filing of responsive reports "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii).

As Rule 26 clearly explains, rebuttal reports are intended to contradict or rebut evidence on the same subject matter in the opposing party's initial report. *See also Withrow v. Spears*, 967 F. Supp. 2d 982, 1001 (D. Del. 2013) ("The function of rebuttal evidence is to explain, repel, counteract or disprove evidence of the adverse party."). Although rebuttal reports may cite new evidence, they may only do so when that evidence is used to "directly contradict or rebut the opposing party's expert." *Id.* Moreover, it is insufficient for a report to "simply address the same general subject matter as a previously-submitted report"; the report must contradict or rebut the actual contents of the initial report. *Id.*

Mr. McKenna's report includes material that is not appropriate for a rebuttal report. Mr. McKenna begins his report by explaining various methodologies for calculating damages in breach of contract cases that have been used by courts in Delaware. Dkt. No. 132, Exh. 1 at ¶¶ 11–14. Mr. McKenna then explains that Dr. Risler failed to apply those methodologies in his report and offers a summary of Dr. Risler's approach. *Id.* at ¶¶ 15–24. Later, Mr. McKenna identifies other purported flaws in Dr. Risler's approach. *Id.* at ¶¶ 44–51, 56–60, 71. Those sections of Mr. McKenna's report contain rebuttal material. In each, Mr. McKenna directly engages with the content of Dr. Risler's report, offering opinions and evidence that contradict or rebut Dr. Risler's opinions.

But outside of the above-referenced sections, Mr. McKenna offers his own estimate of damages using the methodologies that he previously described. *Id.* at ¶¶ 25–43, 52–55, 61–70. In these sections, Mr. McKenna does not engage with, or even cite to, Dr. Risler's opinions. It is clear

2

from the report that Mr. McKenna is offering an alternative damages theory that is unrelated to the theory put forth in Dr. Risler's opening report.  Accordingly, those opinions are not appropriate subject matter for a rebuttal report.  *See, e.g.*, *Bradley v. Amazon.com, Inc.*, No. CV 17-1587, 2023 WL 2574572, at *13 (E.D. Pa. Mar. 17, 2023) (finding report was not a rebuttal report because the expert's "opinions do not appear to 'tie in' to one another" but instead addressed two different theories of causation); *Bowman v. Colomer*, No. CIV.A. 09-1083, 2011 WL 3812583, at *2 (W.D. Pa. Aug. 29, 2011) (finding report was not a rebuttal report when it "interject[ed] new items of damages" that were not contained in any affirmative expert reports).

The parties devote much briefing to the issue of whether rebuttal reports are permitted to address issues about which the offering party has the burden of proof.  Although Mr. Wang is correct that at least one court has advised that the "Third Circuit's rule does not automatically exclude [from a rebuttal report] anything an expert could have included in his or her original report," the case law is clear that "rebuttal evidence is limited to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief" and "is not an opportunity for the correction of any oversights in the plaintiff's case[-]in[-]chief."  *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) (citations omitted).  Here, the opinions from Mr. McKenna that directly rebut the opinions from Dr. Risler, which are theories that Injective would presumably present in its case-in-chief, are appropriate rebuttal matter even if those opinions and evidence could have been included in an opening report.  But the alternative damages calculations from Mr. McKenna amount to a damages theory that would need to be presented in Mr. Wang's case-in-chief, given that he has the burden of proof on damages.  *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  Those calculations do not directly rebut Dr. Risler's opinions, so if Mr. Wang wanted Mr.

3

McKenna to testify to the jury regarding his methodology for calculating damages, Mr. Wang needed to submit those opinions in a report on December 6, 2024, when initial reports were due.

Mr. Wang's case law does not counsel otherwise. In *TC Systems Inc. v. Town of Colonie, New York*, the court permitted a rebuttal expert to "rebut economic and accounting expert testimony with practical expertise in engineering and public rights-of-way management." 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002). Although the court described the rebuttal report as offering a different "methodology," the court explicitly noted that the testimony and methodology of the rebuttal expert "only becomes relevant through the testimony of" the initial expert. *Id.* Here, in contrast, Mr. McKenna's testimony would be relevant even if Dr. Risler did not testify, because Mr. Wang bears the burden of proof on the issue of damages. Similarly, in *Armstrong v. I-Behavior Inc.*, both experts were presenting on the issue of economic loss, albeit one from an economic perspective and the other from a vocational perspective. No. 11-CV-03340, 2013 WL 2419794, at *4 (D. Colo. June 3, 2013). Here, Mr. McKenna can rebut Dr. Risler's damages theory by offering a different perspective on that theory, but not by presenting an unrelated affirmative theory of damages.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Third Circuit has identified a set of factors that courts should consider in determining whether evidence should be excluded. Those factors are known as the *Pennypack* factors. They are: (1) the prejudice or surprise to the party against which the evidence would be admitted; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule in question would disrupt the orderly and efficient trial of the case; and (4) bad faith or willfulness on the part of the party offering the evidence in failing to comply with the court order. *Meyers v. Pennypack Woods Home*

4

*Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977). In additional to those factors, the Third Circuit considers the importance of the excluded evidence. *See Quinn v. Consolidated Freightways Corp. of Del.*, 283 F.3d 572, 577 (3d Cir. 2002).

As Judge Burke has pointed out, "though the *Pennypack* factors may be very forgiving, they are not a sieve." *Guardant Health, Inc. v. Foundation Medicine, Inc.*, No. 17-1616, Dkt. No. 423 (D. Del. April 28, 2020). Rather, "[c]ourts applying the *Pennypack* factors in the case of sophisticated, complex litigation involving parties represented by competent counsel have been less indulgent in their application and more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, No. 05-132, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007); *see also, e.g., Cirba Inc. v. VMware, Inc.*, No. 19-742, 2023 WL 6799267, at *2 (D. Del. Mar. 30, 2023); *First Quality Tissue, LLC v. Irving Consumer Prod. Ltd.*, No. 19-428, 2020 WL 6286862, at *2 (D. Del. Oct. 27, 2020); *Finjan, Inc v. Rapid7, Inc*, No. 18-1519, 2020 WL 5798545, at *4 (D. Del. Sept. 29, 2020); *TQ Delta, LLC v. Adtran, Inc.*, No. 14-954, 2020 WL 4529865, at *2 (D. Del. July 31, 2020); *Opengate Cap. Grp. LLC v. Thermo Fisher Sci. Inc.*, No. CV 13-1475, 2016 WL 8488409, at *4 (D. Del. Feb. 1, 2016). This case qualifies as sophisticated, complex litigation involving parties represented by competent counsel.[1]

---

[1] Although the *Pennypack* factors have been applied to the proposed exclusion of evidence in a variety of settings, it is not clear why those factors are appropriate when considering a motion under Rule 37(c) to exclude evidence for a party's failure to provide information required by Rule 26(a) or (e). The *Pennypack* factors originally arose in the context of a violation of a pretrial order rather than a violation of the disclosure requirements of Rule 26. *See Meyers*, 559 F.2d at 903; *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). Under the current version of Rule 37, violations of court orders are governed by Rule 37(b), while violations of the disclosure rule are governed by Rule 37(c). Rule 37(b) is permissive regarding the remedies a court may order for failure to comply with a court order. In contrast, Rule 37(c) states that if a party fails to comply with the disclosure rules, "the party is not allowed to use that information . . . at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) ("Rule 37 is written in mandatory terms, and is

I find that the factors weigh in favor of exclusion of the portions of Mr. McKenna's report that are not appropriate rebuttal material. Regarding surprise, I agree with Injective that it would be surprising to receive an affirmative damages theory served under the guise of a rebuttal report after the plaintiff had failed to provide any affirmative damages theory in any initial report. Regarding prejudice, Mr. Wang proposes that Injective could be permitted to submit a rebuttal report to cure any prejudice. I do not agree that permitting Injective to file a rebuttal report would adequately cure the prejudice. Mr. McKenna had an advantage when developing his damages theory because he was already privy to Dr. Risler's theory. In contrast, Dr. Risler had to develop his damages theory without any insight into Mr. McKenna's theory. Allowing Dr. Risler to respond now does not remedy that advantage held by Mr. McKenna. Moreover, case dispositive motions are due on March 28, 2025. Therefore, Injective would have to dedicate time to working with Dr. Risler to prepare a rebuttal report that it would otherwise spend preparing dispositive motions. And I find no reason to further delay the filing of motions. In the original scheduling order, motions were to be filed on November 29, 2023. Dkt. No. 19 at ¶ 11. The schedule in this case has now slipped by a year and half, and there is no good reason to further delay proceedings.

---

designed to provide a strong inducement for disclosure of Rule 26(a) material.").

    Although it has been suggested that the *Pennypack* factors embody the harmlessness standard set forth in Rule 37(c), *see, e.g.*, *UCB, Inc. v. KV Pharm. Co.*, 692 F. Supp. 2d 419, 421 (D. Del. 2010), *Pennypack* has not typically been regarded as a harmless error rule. Moreover, the distinction is not just semantic. The burden of proving that a violation of Rule 26(a) was harmless or justified falls on the party opposing the exclusion of the evidence, *see Johnson ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 7882 (6th Cir. 2003) (citing cases), while the *Pennypack* factors "impose a heavy burden" on the party seeking to have the evidence excluded, *Acceleration Bay LLC. V. Activision Blizzard, Inc.*, No. 16-453, 2017 WL 11517421, *5 (D. Del. Nov. 7, 2017). That said, it is common for district courts in the Third Circuit to apply *Pennypack* in situations such as this one. *See, e.g.*, *TQ Delta, LLC v. Comcast Cable Commc'ns LLC*, No. CV 15-611, 2024 WL 5432091, at *3 (D. Del. Nov. 19, 2024). For that reason, I have accorded Mr. Wang the benefit of applying the *Pennypack* factors in this case, even though doing so appears to be in tension with the plain language of Rule 37(c).

Regarding bad faith or willfulness, I am concerned by Mr. Wang's approach to discovery in this litigation. As mentioned, dispositive motions were originally due over a year ago, but the schedule has been extended five times. In that time, Mr. Wang sought sanctions based on Injective's Rule 30(b)(6) witness being purportedly unprepared to testify, yet Mr. Wang failed to meet and confer with Injective regarding the scope of the topics for the deposition. *See* Dkt. No. 107 at 9. Mr. Wang also sought to reopen fact discovery to depose Injective's Rule 30(b)(6) witness in his individual capacity, despite having failed to notice the deposition prior to close of fact discovery. *Id.* at 3. Mr. Wang also sought to reopen discovery in a motion seeking production of specific valuation documents and then sought to use that forthcoming production as a reason to further delay the exchange of expert reports. Although Mr. Wang's conduct may not rise to the level of bad faith or willfulness, I do find his actions "are part of a developing pattern of untimeliness," which weighs in favor of excluding the affirmative portions of Mr. McKenna's report. *See Integra LifeSciences Corp. v. Hyperbranch Med. Tech., Inc.*, No. CV 15-819, 2018 WL 3814614, at *3 (D. Del. Mar. 23, 2018).

Regarding importance, Mr. Wang asserts that under his damages theory, damages are "easily calculable" and that he "never had any intention to retain an expert to demonstrate to the court and the jury the simple calculation required under such methodology." Dkt. No. 142 at 4–5. Based on that representation, I conclude that Mr. Wang does not consider the affirmative portions of Mr. McKenna's report to be genuinely critical to his case. *See Chase Manhattan Mortg. Corp. v. Advanta Corp.*, No. 01-507, 2004 WL 912949, at *1 (D. Del. Apr. 22, 2004). Therefore, the overall minimal importance of those affirmative opinions weighs in favor of exclusion. *See Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 194 (3d Cir. 2007) (finding partial exclusion of expert testimony to be "not too harsh a sanction").

In sum, I find that the *Pennypack* factors, on the whole, weigh in favor of exclusion of Mr. McKenna's affirmative theories set forth at paragraphs 11–14, 25–43, 52–55, 61–70, and 72 of his rebuttal report. I will therefore grant Injective's motion to strike those portions of Mr. McKenna's report and any testimony at trial based on those paragraphs.

IT IS SO ORDERED.

SIGNED this 11th day of March, 2025.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE