

## BILLION LAW

20184 Coastal Hwy. Suite 205
Rehoboth Beach, DE 19971

1/31/26

<u>VIA CM/ECF</u>
The Honorable William C. Bryson
United States Court of Appeals
Howard T. Markey National Courts Building
717 Madison Place, N.W.
Washington, DC 20439

     **Re: Xin Wang v. Injective Labs Inc. et al., Case No. 1:22-cv-00943-WCB**
       **Admissibility of 409A Valuations**

Dear Judge Bryson:

We write to address the admissibility of the Section 409A valuation report commissioned by Injective and prepared by Redwood (the "Redwood Report"). The Defendant seeks to have the Court deprive the jury of any chance to weigh this evidence even though it is relevant, material and admissible.

**1. The Report is Material and Probative:** Injective commissioned Redwood to perform an independent valuation of the INJ token, specifically to provide a reasonable fair market value for the INJ tokens. To resolve a central factual issue in this case, the jury must determine the value of INJ tokens when Mr. Wang received his Consulting Agreement. The Redwood Report is undoubtedly material because it provides a contemporaneous, independent valuation of the INJ tokens and, in fact, is the only such valuation in the record. As the IRC states and Mary Lewis will testify, this *independent appraisal* carries a "presumption of reasonableness" as to the fair market value per INJ token. See 26 C.F.R. § 1.409A-1(b)(5)(iv)(B)(2)(i).[1] Excluding it would deprive the jury of a key data point informing the very question they are asked to resolve.

---

[1] A copy of Ms. Lewis's report is attached hereto as **Exhibit 1**.

Plaintiff intends to lay a proper foundation through Ms. Lewis and Mr. Chen before submitting the 409A reports to the jury. Such critical evidence should not be precluded before Plaintiff has an opportunity to do so.

**2. Injective's Present and Prior Representations are Disingenuous:** This Court determined Plaintiff requested the 409A report during discovery, and Injective failed to disclose it. (*See* D.I. 126.) Injective's nondisclosure was not inadvertent; it was deliberate. When Plaintiff learned about the report's existence from a third party after the close of discovery and confronted Injective, Injective did not deny its existence but refused to produce it.[2] Plaintiff moved to compel the production of "any 409A reports related to the INJ token." (D.I. 211 at 5.) Injective disingenuously argued "it is blackletter law that a party cannot produce a record that does not exist," denying only the existence of a 409A valuation prepared by a particular firm, Teknos. (D.I. 186 at 3.) However, the report existed and was prepared by another firm, Redwood. This Court saw through Injective's non-denial denial then, and it must do so again.

Now, Injective wants the Court to resolve all hearsay exceptions in its favor based on the following finely parsed statement: "the Injective Board did not 'approve' the use of the Redwood Report," and Mr. Chen did not "file an 83(b) election or other tax filing with the IRS referencing or otherwise in reliance on this report." D.I. 250. Note the narrowness. "Approve" is in air quotes. Mr. Chen is the only person identified.

Mary Lewis's testimony in her deposition and at trial will evidence that Injective's statement – that "the Injective Board did not 'approve' the use of the Redwood Report"— is materially ambiguous. Boards need not "approve" valuation reports in the abstract; they typically rely on the valuation provided in such reports to "approve" equity grants and token awards. Also, such reports provide the fair market value for deferred compensation agreements (e.g. token awards) to employees and service providers generally, not just executives (e.g. Mr. Chen). Whether Mr. Chen filed an 83(b) election is a personal tax decision with little, if any, bearing on the materiality of the 409A report.

Injective's formulation is therefore materially ambiguous. It does not state that the Board did not rely on the Redwood valuation, did not consider it, did not adopt its conclusions, or did not act on it. It merely denies a narrowly framed concept of "approval," placed in quotation marks and left undefined.

---

[2] Plaintiff afforded Defendants *three prior* opportunities to deny the existence of 409A report for the INJ token: first, during the counsel for Plaintiff's initial phone call to Stephen Palley; second, following the in-person deposition of Plaintiff; and third, during Mr. Palley's phone call to the counsel for Plaintiff in which Mr. Palley confirmed he spoke with his client but refused to confirm or deny the existence of such reports.

Having previously avoided disclosure through similarly careful parsing, Injective cannot now use an opaque and selectively worded assertion to foreclose inquiry. Plaintiff is entitled to explore whether, how, and for what purposes the Redwood Report was relied upon by the Board, regardless of whether Injective chooses to characterize that reliance as "approval."

**3. *Jacobs v. Akademos* Supports Admission, Not Exclusion:** The Defendant relies on *Jacobs v. Akademos, Inc.*, 326 A.3d 711 (Del. Ch.), *judgment entered*, (Del. Ch. 2024), *aff'd*, 342 A.3d 1165 (Del. 2025), as a basis for barring admission. Just as it did in unsuccessfully opposing the motion to compel that yielded the valuation in the first place. D.I. 186 pp 4. This reliance is entirely misplaced. The *Jacobs* decision does not support the unilateral exclusion of 409A valuations.

*First*, the admissibility of the report in *Jacobs* was not in dispute; ***it was admitted by consent of the parties and expressly considered by the fact-finder.*** *See* <u>Exhibit 2</u> (Joint Pretrial Order Jointly Admitted Fact ¶¶63-64 at p.12)  & <u>Exhibit 3</u> (Joint Exhibit List p.2, line 5.).

*Second*, while the Court in *Jacobs* found the valuation was not controlling given the specific facts of that case, it explicitly acknowledged that such reports could be binding in other contexts. The Court stated:

> "It is tempting to hold the defendants to their determination of fair market value, and a case may come where a court will use the Rule 409A valuation for that purpose."

The Defendant fails to cite a single case where a 409A valuation has been unilaterally and entirely excluded from evidence. Those that they do cite all acknowledge the importance of 409A valuations, which were introduced. *Quantum Tech. Partners IV, L.P. v. Ploom, Inc.*, 2014 WL 2156622, at *6 (Del. Ch. May 14, 2014) ("I find that Quantum sufficiently has demonstrated that documents associated with this category, including, but not limited to, the next available 409A valuation, are essential to achieving its primary purpose"); *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 69 (Del. Ch. 2013) ("The Board first determined that the fair market value of Trados's common stock was $0.10 per share in July 2004 . . . ***JX 200*** at 3. In November 2004, the Board reiterated its $0.10 per share determination. ***JX 261*** at 3. (emphasis added)); *Hyde Park Venture Partners Fund III, L.P. v. FairXchange, LLC*, 2024 WL 3579932, at *20 (Del. Ch. July 30, 2024) ("The Selling Stockholders next point to a Rule 409A valuation that FairX procured in April 2021. That valuation generated a figure of $40 million, which the Board approved. But the purpose of a Rule 409A valuation is to support 'the exercise price for granting options and common stock to ... employees, directors, and others to comply with IRC [Section] 409A and as an input for valuations pursuant to ASC 718 for financial reporting purposes.'" ***JX 738 at 4.*** (emphasis added)). In reality, by Defendant's own proffered cases, courts routinely admit such valuations.

**3. The Report is Admissible Over Hearsay Objections:** The Redwood Report is admissible as an opposing party's statement under Federal Rule of Evidence 801(d)(2). It qualifies under three separate subsections:

- **Adoption (Rule 801(d)(2)(B)):** By commissioning the report and utilizing it for tax compliance, Injective "manifested that it adopted or believed to be true" the valuation contained therein.
- **Authorized Statement (Rule 801(d)(2)(C)):** Redwood was a person "whom the party authorized to make a statement on the subject" of the token's value.
- **Agency (Rule 801(d)(2)(D)):** The statement was made by the party's agent on a matter within the scope of that relationship and while it existed.

Injective has never denied, nor could it, that it commissioned the Redwood Report, that the *valuation in the report* was adopted by its board, or that it distributed the report to its token holders. This establishes the admissibility under each of these exceptions. At the very least, Plaintiff should be presented and opportunity to lay a proper foundation.

**4. The Report Qualifies as a Business Record:** In addition, for the same reasons, the Report is admissible as a business record under Rule 803(6). *See United States v. Pelullo*, 964 F.2d 193, 200 (3d Cir. 1992) (citing *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989)). The valuation was created and maintained in the ordinary course of Injective's business to satisfy regulatory requirements (Section 409A) and was relied upon in its operations.

Like the independent appraisal admitted in *United States v. Lignelli*, the 409A was prepared contemporaneously by an independent valuation professional in the ordinary course of business—not for purposes of litigation—and was obtained and relied upon as part of the Company's regular business activities. *United States v. Lignelli*, No. 2:11-cr-00234, slip op. at 2 (W.D. Pa. June 6, 2014) (admitting independent appraisal as a business record under Rule 803(6)) attached hereto as **Exhibit 4**. Courts have recognized that the routine commissioning and reliance on third-party valuation reports is a standard business practice, and nothing about the 409A suggests a lack of trustworthiness. Nor has Defendant identified any indicia of unreliability.

Ms. Lewis will testify to her familiarity with Redwood as a company that regularly provides 409A valuation reports for token-based compensation agreements, and that companies such as Injective typically rely on such reports. Plaintiff contends that Chen will not deny Injective's reliance on the valuation in the report, as he has not done so to date. Hearsay is not a concern where, as here, there are "circumstantial guarantees of trustworthiness in a record contemporaneously prepared by one who acts under a business duty of care and accuracy, particularly when the business entity for which the record is made relies on it." *United States v. Licavoli*, 604 F.2d 613, 622 (9th Cir. 1979).

[Remainder of Page Intentionally Left Blank]

For the foregoing reasons, we respectfully request that the Court admit the Redwood 409A Report into evidence. Should the Court remain unclear at this stage as to whether the proper foundation is available for the hearsay exceptions cited above, we respectfully request that the Court reserve its ruling until such foundation is laid through testimony at trial.

Respectfully submitted,

/s/ Mark M. Billion (#5263)

*Cc: Counsel of Record via CM/ECF*

**Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

XIN WANG,

       Plaintiff,

       vs.

INJECTIVE LABS INC and ZHONGHAN "ERIC" CHEN,

       Defendants.

Civil Action No.: 1:22-CV-00943-WCB

**INITIAL REPORT OF PLAINTIFF'S EXPERT MARY M. LEWIS**

# TABLE OF CONTENTS

I.      Introduction ...................................................................................................................... 3

    A.    Background and Experience ......................................................................................... 3

    B.    Summary of Assignment .............................................................................................. 3

    C.    Materials Considered ................................................................................................... 2

    D.    Summary of Opinion .................................................................................................... 2

II.     Background ....................................................................................................................... 2

    A.    Blockchains ................................................................................................................. 2

    B.    Virtual Currency (i.e. Tokens) ..................................................................................... 2

    C.    Tokens as Compensation .............................................................................................. 3

    D.    Disclosing Tokens Reserved for Capital Raising versus Compensation ........................... 3

III.    Opinion ............................................................................................................................ 4

    A.    Token-based incentive awards are commonly used to attract and compensate early-stage service providers working on the development of a token network. ................................... 4

    B.    Companies standardly reserve tokens to compensate service providers and designate such allocations as "Team Tokens" and "Advisor Tokens." .................................................. 5

IV.    Conclusion ........................................................................................................................ 6

Appendix A – Curriculum Vitae .............................................................................................. 7

## I.    Introduction

### A.  Background and Experience

I, Mary M. Lewis, am a partner at the law firm Baker Tax Law, specializing in executive compensation and employee benefits matters, including token-based incentives for startup and existing blockchain projects. I am the Chair of the Executive Compensation Practice.

I received a bachelor's degree in philosophy and a certificate in economics, philosophy and politics from Duke University in 2007. I received a master's degree in special education from the University of Hawaii at Manoa in 2009. I received my juris doctorate from Northwestern University Pritzker School of Law in 2013.

I was an associate in the Chicago, Illinois law office of Latham & Watkins from 2013 through 2016, where I specialized in executive compensation matters for public and private companies of all sizes, including in the preparation of public registration statements.

From 2017 through 2024 I worked in the Reston, Virginia law office of Cooley LLP, first as an associate and then as special counsel specializing in executive compensation and employee benefits matters, including equity compensation issued by companies of all sizes with a particular focus on token compensation matters for Web3 and blockchain-based projects. While at Cooley, I drafted the firm's form of token compensation plan and award agreements and established over 50 token compensation programs.

From 2024 until the present, I have been a partner at Baker Tax Law, where I head the firm's executive compensation practice. My practice consists of drafting, revising, and negotiating award agreement terms related to executive compensation and employee benefit matters, advising executives and companies in negotiations related to complex compensation awards, and structuring and maintaining equity and token-based compensation programs throughout the corporate life-cycle.

My curriculum vitae is attached hereto as <u>Appendix A</u>.

### B.  Summary of Assignment

I have been retained by Bull Blockchain Law, counsel to Plaintiff, Xin Wang, to offer my expert opinions regarding token-based compensation awards. Specifically, I have been asked to offer my expert opinions regarding standard industry practices related to the promise of future tokens issued by such projects as compensation for the services of pre-issuance team members, developers, consultants, and other employees and service providers.

I have been retained at my standard hourly rate of $795 per hour and, if required, a minimum rate of $6,000 per day of deposition or trial testimony. My fee is not contingent on the outcome of this matter.

### C. Materials Considered

In reaching my opinions expressed herein, I have relied on my 10 years of experience and expertise regarding industry practices and standard compensation operating procedures. Over the course of my career, I have drafted, edited, reviewed, negotiated, and/or otherwise assisted in the development and/or implementation of over 50 token-based compensation or incentive plans related to a wide range of foreign and domestic based blockchain projects from 2021 to the present. While at Cooley, I drafted, updated and revised the firm's token incentive plan and form of award agreements. In November 2022, I co-authored an Expert Q&A on Cryptocurrency Compensation for Thomson Reuters Practical Law legal resources. That experience has made me an expert on the standard industry practices related to such token-based compensation strategies.

Specific documents and sources referenced are attached hereto as exhibits to my report.

### D. Summary of Opinion

It is my opinion that companies in the blockchain and cryptocurrency industry which develop protocols and mint tokens native to such protocols, customarily attract and compensate service providers with token-based awards in addition to or in lieu of cash compensation. For early-stage projects, these awards often take the form of a promise to receive tokens in the future, when the token is minted or following the achievement of certain vesting milestones. Token-based compensation serves as a retentive tool when cash is limited while also aligning the financial interests of service providers with those of the project in general.

## II.    Background

### A. Blockchains

Blockchains are tamper-evident and tamper-resistant digital ledgers implemented in a distributed fashion (i.e., without a central repository) and usually without a central authority. At their basic level, they enable a community of users to record transactions in a shared ledger within that community, such that under normal operation of the blockchain network, no transaction can be changed once published.

### B. Virtual Currency (i.e. Tokens)

"Tokens," "cryptocurrency" or "crypto assets" are forms of virtual currency, aka a "digital representation of value that functions as a medium of exchange, a unit of account, and/or a store of value."[1] Virtual currency is sometimes distinguished as a utility token or a security token. A utility token is a digital representation of value or rights that is offered and sold for the purpose of:

- Facilitating access to, participation in, or development of a distributed ledger, blockchain, or other digital data structure;
- Raising capital for the development of the network or platform;

---

[1] U.S. Department of the Treasury, Internal Revenue Service. (2014). Internal Revenue Bulletin: 2014-16 (Notice 2014-21, IRS Virtual Currency Guidance). Retrieved from https://www.irs.gov/pub/irs-drop/n-14-21.pdf.

- Accessing certain benefits or functionality on that blockchain or platform; and/or
- Participating in or developing that blockchain or network, or an associated application, enhancement, related functionality, or related product.[2]

The development of tokens is a key piece of the crypto ecosystem. Once developed, and subject to certain securities law restrictions, tokens are often traded on established exchanges similar in many ways to public company stock.

### C.  Tokens as Compensation

Many companies in the crypto and Web3 industry use token-based awards in their compensation packages in lieu of or in addition to standard cash and equity compensation.

Employees, consultants and advisors often join token development projects with the expectation that they will receive tokens they can use to participate in the network or sell for early liquidity. While tokens cannot be transferred for tax purposes until they are generated or "minted" (aka the token generation event or "TGE"), in order to attract and incentivize team members, token projects often promise future token interests in their service and employment agreements. While these promises cannot transfer tokens, they offer the opportunity to receive tokens early, often before they are publicly available.

For tax purposes, the most advantageous time to grant token awards to early team members is before public launch. In recent years, these grants have often been made pursuant to a token incentive plan. Token incentive plans are similar in many ways to a traditional equity incentive plan found at a corporate start-up. They provide for the grant of different token-based awards (such as fully vested tokens, restricted tokens, and restricted token units (aka future token interests) and set aside a pool of tokens reserved for grants to employees, consultants and advisors.

### D.  Disclosing Tokens Reserved for Capital Raising versus Compensation

It is common practice for companies in the crypto industry that develop tokens to disclose allocations of the total token supply. Typically, companies will use industry-specific terminology to delineate allocations reserved for capital-raising activities versus allocations reserved for compensation. Typically, tokens reserved for compensating founders, employees and service providers rather than capital raising activities will be designated as "company reserve" "team tokens" and/or "advisor tokens," respectively.

On October 25, 2022, Binance Research published a Project Report (the "Injective Report") on the Injective protocol and the INJ token.[3] The Injective Report describes the Injective protocol as "an open, interoperable layer-one blockchain for building powerful DeFi applications and the INJ token as "the native utility token that powers Injective and its rapidly growing ecosystem."[4] Section 4 of the Injective Report, titled "Token Sales and economics" is broken into

---

[2] Blockchain and Distributed Ledger Technology (DLT): Overview, Practical Law Practice Note w-023-8731
[3] Binance Research, Injective (INJ), BINANCE (Oct. 25, 2022), https://www.binance.com/en/research/projects/injective.
[4] Id.

3

two sections "4.1 Token allocation" and "4.2 Token sales data."[5] Section 4.1 describes the percentage of the total token supply that will be allocated to different groups. It identifies allocations for three sales, the "Binance Launchpad Sale," the "Seed Sale," and the "Private Sale" (collectively, "Investor Tokens"). It also identifies allocations for the "Team," "Advisors," "Ecosystem Development," and "Community Growth" (collectively, "Contributor Tokens").

### III.    Opinion

#### A. Token-based incentive awards are commonly used to attract and compensate early-stage service providers working on the development of a token network.

In my experience as a tax attorney specializing in equity incentive and token-based compensation, I've advised more than 50 companies on issuing tokens as compensation to employees and consultants in exchange for services. In such capacity, I've had the opportunity to observe, draft, and negotiate agreements between the issuers and their employees and consultants. In each instance, the issuer compensated employees and service providers with the right to receive tokens in exchange for services and no or nominal cash consideration, which is consistent with my understanding of standard industry practices.

Token-based compensation awards generally mimic traditional equity compensation awards and, like traditional equity-based awards, are frequently issued in lieu of cash, to incentivize early-stage employees and other service providers. For securities law reasons, awards to U.S. persons by U.S.-domiciled companies are commonly provided under an incentive plan, with specific terms set out in individualized award agreements. Non-U.S. persons may receive token-based compensation for services under various agreements in reliance on alternative securities law exemptions. In both contexts, however, token-based compensation, like early-stage equity awards, will typically be granted as compensation for services rendered for no or nominal cash consideration.

When granting token-based awards, many companies seek a third-party valuation of the underlying tokens for tax purposes.[6] Such valuations are typically conducted by independent valuation firms specializing in token-based compensation awards. For early-stage projects with tokens that have been created but do not trade on an established market, these valuations typically value each token at a nominal value less than $0.01.

In providing token-based compensation, the goal of the issuer is to provide employees and service providers with incentive compensation or "upside" through the issuance of an asset expected to appreciate as the technology underpinning the token is developed and demand for the token grows. Such development and growth are often based on the efforts of such service providers and the token is used to align incentives.

---

[5] Id.
[6] Such valuations are known as "409A valuations." When a 409A valuation is conducted by an unaffiliated or independent party, it is eligible for "safe harbor" status, meaning it is presumed to be reasonable by the IRS for purposes of Sectio 409A of the Internal Revenue Code of 1986, as amended.

In my practice, I specialize in ensuring efficient tax treatment is afforded to recipients and issuers as a result of the common practice of providing tokens to employees and consultants in exchange for their services. For example, in the case of U.S. Persons, restricted tokens can be a tax-efficient vehicle for early-stage companies, especially if granted before public launch. Recipients of restricted token awards may file an election under Section 83(b) of the Internal Revenue Code (an 83(b) election) to take the nominal value of the tokens into account for ordinary income tax purposes at the time of grant (following the token generation event) rather than at the time of vesting when the tokens may have appreciated.[7]  Because the full value of a token award can be taken into income at the time of grant (provided such underlying tokens have been minted), the recipient does not incur any additional taxation until they transfer the tokens (following any applicable lock-up and vesting periods). Any gain at the time of the transfer is eligible for capital gains tax treatment, which may be short-term or long- term depending on how long the tokens have been held.

Alternatively, early-stage projects may provide key employees with the opportunity to purchase tokens, also at this nominal early valuation, and avoid taxation on the award entirely. In my experience, it is standard practice for recipients of token-based compensation to obtain favorable tax treatment by electing to purchase the tokens at a nominal value prior to public launch or pay taxes on the nominal value of the tokens received on the date of grant and receive capital gains tax treatment on any gain at the time of transfer.

**B.    Companies standardly reserve tokens to compensate service providers and designate such allocations as "Team Tokens" and "Advisor Tokens."**

When a token network is established, the company typically sets aside a batch of tokens for founding team members and employees (often referred to in the industry as "Team Tokens"), and for strategic advisors. In my experience, early stage companies in the crypto and Web3 industry reserve a fixed number of tokens for employees, and advisors as compensation similar to how shares of an emerging corporation would be set aside for its equity incentive plan pool and awarded to such parties. These "allocations," as the term is used in the industry, are provided to such parties as compensation in exchange for services, require no or nominal cash consideration, and are not used for fundraising.

Based on my extensive experience with structuring token-based compensation awards and familiarity with standard industry practices and terms around such issues, it is my opinion that persons familiar with the cryptocurrency industry would understand the references in the Injective Report to allocations for "Team" members and "Advisors" to mean such allocations will be granted to employees, consultants and advisors as compensation for services at no or nominal additional cost and not used for capital raising purposes.

---

[7] *See* § 230.701(g); see also Expert Q&A on Cryptocurrency Compensation.

## IV.    Conclusion

It is my opinion that companies in the blockchain and cryptocurrency industry which develop protocols and mint tokens native to such protocols, customarily attract and compensate service providers with token-based awards in addition to or in lieu of cash compensation. For early contributors, these awards are provided in exchange for services and/or nominal cash consideration. In my experience reviewing more than 50 valuation reports assessing the value of token-based compensation, and based on my understanding of industry standards, the value of tokens as determined by a third-party valuation provider is typically less than $0.01 for tokens not yet trading on an established market as of the valuation date.

The opinions expressed herein are stated to a reasonable degree of professional certainty based on my experience and expertise and the information made available to me as of the date of this report. I reserve the right to supplement and/or amend this report and my opinions if additional pertinent information becomes available.

Mary M. Lewis

6

**Exhibit 2**

**Exhibit 3**

**EFiled:  Sep 05 2023 05:05PM EDT**
**Transaction ID 70797362**
**Case No. 2021-0346-JTL**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| BRIAN JACOBS, ALAN JACOBS, THE BERNARD B. JACOBS AND SARA JACOBS FAMILY TRUST, JEAN-LOUIS VELAISE, DALE KUTNICK, TOREN KUTNICK, EDWARD B. ROBERTS, JOHN DENNIS, SHLOMO BAKHASH, and JOAN RUBIN, | |
| Plaintiffs, | C.A. NO.: 2021-0346-JTL |
| vs. | |
| AKADEMOS, INC., KOHLBERG VENTURES, LLC, BAY AREA HOLDINGS, INC., JOHN EASTBURN, GARY SHAPIRO, JAMES KOHLBERG, RAJ KAJI, BILL YOUSTRA and BURCK SMITH, | |
| Defendants. | |

## PRE-TRIAL STIPULATION AND [PROPOSED] ORDER

Pursuant to Chancery Court Rule 16, and subject to the approval of the Court, Plaintiffs Brian Jacobs, Alan Jacobs, the Bernard B. Jacobs and Sara Jacobs Family Trust, Jean-Louis Velaise, Dale Kutnick, Toren Kutnick, Edward B. Roberts, John Dennis, Shlomo Bakhash, and Joan Rubin (collectively the "Plaintiffs" or the "Common Shareholders") and Defendants Akademos, Inc., Kohlberg Ventures,

LLC ("KV"), Bay Area Holdings, Inc. ("BAHI"), John Eastburn, Gary Shapiro, James Kohlberg, Raj Kaji, Bill Youstra and Burck Smith jointly submit this Pre-Trial Stipulation and [Proposed] Order.

## I.    NATURE OF THE ACTION AND PROCEDURAL HISTORY

1.      On April 22, 2021, Plaintiffs filed their Verified Complaint for: (1) Appraisal pursuant to 8 *Del. C.* § 262 against Akademos (Count I); (2) breach of fiduciary duty against Eastburn, Kohlberg and Youstra (Count II); (3) breach of fiduciary duty against Eastburn, Shapiro, Kohlberg, Kaji, Youstra and Smith (Count III); and (4) aiding and abetting fiduciary duty against KV and BAHI.

2.      On June 11, 2021, defendants Shapiro and Smith filed a motion to dismiss Count III of the Verified Complaint against them.

3.      On July 28, 2021, Plaintiffs filed their Amended Verified Complaint which added additional factual allegations and maintained the same claims.

4.      On August 25, 2021, defendants Shapiro and Smith filed a motion to dismiss Count III of the Amended Verified Complaint against them.  Plaintiffs filed opposition on September 24, 2021 and Shapiro and Smith filed their reply on October 26, 2021.

5.      On April 5, 2022, following oral argument, the Court denied Shapiro and Smith's motion to dismiss.

6.     On June 16, 2023, defendants Shapiro and Smith filed a motion for summary judgment to dismiss Count III of the Amended Verified Complaint against them.  Plaintiffs filed their opposition on July 17, 2023.  Shapiro and Smith filed their reply on August 17, 2023.  The motion remains pending before the Court.

## II.    STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

7.     The following facts are admitted by the Parties and require no proof. The inclusion of any fact herein is not an admission or acknowledgement of its relevance or materiality to any issue in this Action.

### A. PARTIES

8.     Plaintiff Brian Jacobs owned and was the continuous record and/or beneficial owner of 104,140 shares of Akademos common stock until December 2020.

9.     Plaintiff Alan Jacobs owned and was the continuous record and/or beneficial owner of 619 shares of Akademos common stock until December 2020.

10.    Plaintiff The Bernard B. Jacobs and Sara Jacobs Family Trust owned and was the continuous record and/or beneficial owner of 19,500 shares of Akademos common stock until December 2020.

11.    Plaintiff Dale Kutnick owned and was the continuous record and/or beneficial owner of 28,163 shares of Akademos common stock until December 2020.

12.    Plaintiff Jean-Louis Velaise owned and was the continuous record and/or beneficial owner of 9,811 shares of Akademos common stock until December 2020.

13.    Plaintiff Edward B. Roberts owned and was the continuous record and/or beneficial owner of 7,146 shares of Akademos common stock until December 2020.

14.    Plaintiff John Dennis, in his own name and/or jointly with family, owned and was the continuous record and/or beneficial owner of 7,846 shares of Akademos common stock until December 2020.

15.    Plaintiff Shlomo Bakhash owned jointly with his daughter Elizabeth Bakhash 3,446 shares of Akademos common stock and was the beneficial owner of that common stock until December 2020.

16.    Plaintiff Joan Rubin owned and was the continuous record and/or beneficial owner of 151 shares of Akademos common stock until December 2020. Joan Rubin passed away in 2023.

17.    Defendant Akademos is a Delaware corporation.

18.    Defendant KV is a Delaware limited liability company.  KV is a private equity company that has been an investor in Akademos since 2015.

19.    Defendant BAHI is a Delaware corporation.  BAHI is an affiliate of KV and was an investor in Akademos since 2009.

20.    Until 2020, BAHI owned approximately 33% of Akademos and KV owned approximately 27% of Akademos, each on a fully-diluted basis.  BAHI's ownership was comprised of Series B preferred stock and warrants, Series A preferred stock, Series A-1 preferred stock and warrants and Common warrants. KV's ownership was comprised of Series A-1 preferred stock and warrants.

21.    Defendant John Eastburn ("Eastburn") was a member of the Board of Akademos until 2023.  He is a co-founder and Manager of KV.

22.    Defendant Gary Shapiro ("Shapiro") was a member of the Board of Akademos until 2020.

23.    Defendant James Kohlberg ("Kohlberg") was a member of the Board of Akademos until 2020.  He is a co-founder, Manager, and the sole Member of KV.

24.    Defendant Raj Kaji ("Kaji") was the CEO and a member of the Board of Akademos until 2023.

25.    Defendant Bill Youstra ("Youstra") was a member of the Board of Akademos until 2023.  He is a venture partner at KV.

26.    Defendant Burck Smith ("Smith") was a member of the Board of Akademos until 2020.

## B. RELEVANT NON-PARTIES

### 1. PARCHMAN VAUGHAN

27.     In or about January 2020, Akademos engaged Parchman Vaughan & Company ("Parchman Vaughan") to act as the exclusive financial advisor to the Company with respect to (i) a sale of the Company either through a merger, consolidation, or recapitalization, the sale (in whole or in part) of new or outstanding stock, or the assets (in whole or in part) of the Company or otherwise with an Interested Party, or (ii) raising new capital from one or more Interested Parties.

28.     In or about February 2020, Parchman Vaughan along with management prepared a Confidential Information Presentation describing the Company, its business, operations, management, and financial data, based upon information provided by the Company, to be delivered to pre-screened prospective purchasers, investors, and/or lenders who were approved by the Company.

### 2. JAMES ROWAN

29.     James Rowan is a partner with Parchman Vaughan who led Parchman Vaughan's process to find an investor or acquirer of Akademos.

### 3. AMES WATSON

30.     Ames Watson is a private holding company whom Parchman Vaughan approached in 2020 about a potential transaction with Akademos.

### 4. LAWRENCE BERGER

31.    Lawrence Berger is a partner with Ames Watson who negotiated with Akademos and Parchman Vaughan regarding a potential transaction with Akademos.

### 5. MARK MILLER

32.    Mark Miller is an investment banker with Good Harbor Partners.

## C. AKADEMOS BACKGROUND

33.    Founded in 1999 by Brian Jacobs, Akademos is an education-technology firm that offers a virtual bookstore and marketplace services for educational institutions.

34.    Brian Jacobs served as CEO of Akademos until 2011, when he resigned his title and was replaced by John Squires.  Following his resignation as CEO, Brian Jacobs continued as President of Akademos until December 2012, when he resigned from day-to-day management of the company but remained a Director until December 2020.

35.    Brian Jacobs was the sole member of Akademos's Board of Directors until 2009.

36.    In 2016, Gary Shapiro replaced Scott Eagle and Eastburn replaced Eric Fingerhut on the Akademos Board of Directors.

37.    In May 2018, Squires resigned as CEO and was replaced with Raj Kaji, who the Board of Directors voted to approve as CEO and a member of the Board.

38.     Kohlberg also joined the Akademos Board in October 2018.

39.     Akademos appointed Smith as a paid advisor to the Board in or around November 2018.

40.     In October 2019, Akademos added an additional Board seat and appointed Smith to the Board.

41.     From 1999 to 2020, Akademos never turned a profit.

42.     Akademos' management represented to potential customers in 2019 and 2020 that it would have been operationally profitable if it was not for the significant investment that was being made in sales and marketing efforts and technology development.

43.     From its inception, Akademos suffered from cyclical cash shortfalls and required regular capital infusions to continue as a going concern.

44.     From 1999 to 2009, Brian Jacobs, then-CEO and sole member of the Board of Akademos, raised investment through angel investors' purchases of Akademos common stock.

45.     In 2009, Brian Jacobs, as Akademos's CEO and sole Board member, sought venture capital investment.

46.     BAHI invested in Akademos in 2009 and acquired a majority ownership stake in 2011.

47.    From 2009 to 2020, KV and/or BAHI funded Akademos through debt financings and purchases of preferred equity.  These debt financings and purchases of preferred equity were unanimously approved by Akademos's Board of Directors until 2019.

### D. THE BAHI NOTES

48.    In March 2018, Akademos executed a subordinated convertible promissory note in favor of BAHI, which provided, in the event of a change-in-control, as defined, of Akademos, Akademos would redeem the note in an amount equal to one and half (1.5) times the unpaid balance of principal, plus accrued interest (the "First BAHI Financing").  The First BAHI Financing included a maturity date of 12 months, or March 2019.  The Akademos Board of Directors unanimously approved the First BAHI Financing.  The Akademos common stockholders were invited to participate in the First BAHI Financing on the same terms as BAHI, but all Akademos common stockholders declined.

49.    In the first quarter of 2019, Akademos approached BAHI as well as 13 additional potential counterparties seeking additional capital.

50.    In May 2019, Akademos executed a second subordinated convertible promissory note in favor of BAHI which provided that BAHI would provide $2.25 million in financing (the "Second BAHI Financing").  The terms provided that Akademos would redeem the note in an amount equal to two (2) times the unpaid

balance of principal, plus accrued interest, in the event of a change-in-control, as defined, of Akademos.   In addition, KV required an amendment to its prior $2,000,000.00 convertible note, providing that the prior note would also be redeemed in an amount equal to equal to two (2) times the unpaid balance of principal, plus accrued interest in the event of a change-in-control.    The Second BAHI Financing extended the First BAHI Financing's maturity date, making both the First BAHI Financing and Second BAHI Financing due and payable in September 2020.  The Akademos common stockholders were invited to participate in the Second BAHI Financing on the same terms as BAHI, but all Akademos common stockholders declined.

51.    Prior to the Second BAHI Financing, Jacobs and a group of Common Shareholders sent a letter to Kaji and the Board raising a number of concerns about the Second BAHI Financing.

52.    Jacobs abstained from voting on Second BAHI Financing and the amendments to the First BAHI Financing.

53.    Finally, in April 2020, several months before Akademos consummated the BAHI Acquisition, KV delivered a term sheet to the Company for another convertible note financing transaction (the Third "BAHI Financing").  Under the terms of the Third BAHI Financing, Akademos would sell convertible promissory notes to BAHI subject to the similar terms and conditions as the other outstanding

promissory notes BAHI held. The term in the Third BAHI Financing expired in six months. The Akademos common stockholders were invited to participate in the Third BAHI Financing on the same terms as BAHI, but all Akademos common stockholders declined.

54.     Jacobs abstained from voting on the Third BAHI Financing.

**E. THE BAHI ACQUISITION**

55.     In the fourth quarter of 2019, the Company received two separate indications of interest from potentially interested parties. One proposed to acquire Akademos for private, illiquid securities in a combined business that valued the Company at 25-34% of the newly-combined entity (which would ascribe the Company a notional value of between $5,400,000 and $17,200,000, depending on the assumptions used). The second proposed to acquire the Company for $17,000,000 on a cash-free, debt-free basis (such that the purchase price would be reduced by the Company's outstanding indebtedness), with the purchase price also paid in shares of the buyer's private, illiquid securities.

56.     The Company contacted six different investment banks about becoming the Company's advisor in connection with a dual-track M&A and fundraising process. The Company engaged Parchman Vaughan in January 2020.

57.     The dual-track process that Akademos ran with Parchman Vaughan as advisor lasted from February 2020 to end of September 2020. Parchman Vaughan

and the Company contacted 120 different target parties.  Akademos received four offers during the dual-track process, only one of which (from eCampus) was delivered prior to the bid deadline:

- On March 26, 2020, eCampus proposed to acquire of Akademos for $6 million, comprised of 50% cash.  Akademos negotiated with eCampus, who revised their offer on April 7, 2020 to reflect an enterprise value of $7 million, comprised of 50% cash.

- On May 22, 2020, Invictus Global Management provided a letter of intent for $5 million in senior secured superpriority debtor-in-possession financing in the event Akademos went into bankruptcy.

- On July 13, 2020, BAHI proposed to acquire Akademos for an enterprise value of $12.5 million.

- On July 21, 2020, Ames Watson proposed payment of $500,000 for a 75% stake in Akademos, plus funding Akademos's losses on a going-forward basis.

58.    After analyzing the proposals received, the Board determined to proceed with negotiating the BAHI proposal.  Between July 15, 2020 and July 28, 2020, Company management negotiated the BAHI proposal to include an upward working capital adjustment as part of the proposed transaction, to base the Company's representations and warranties in the merger agreement on those found in the NVCA model stock purchase agreement, and to include a go-shop provision. The Company also negotiated the terms of the "go shop" provision such that (i) the terms of BAHI's offer could be disclosed to potential bidders, (ii) BAHI and KV would not have a right to "top" a superior offer, and (iii) BAHI and KV agreed to vote their shares in favor of any such superior proposal.

12

59.    Under the go-shop provision in the BAHI proposal, Akademos and Parchman Vaughan contacted four target parties that had previously expressed the greatest interest in the Company (eCampus, Kivuto, Ames Watson, and Red Shelf), informed them of the $12,500,000 enterprise value proposed by BAHI, and invited them to submit a superior proposal.  In response, all four target parties informed the Company and Parchman Vaughan that they would not be making any competing or superior offers.

60.    In September 2020, Akademos merged with BAHI (the "BAHI Acquisition"), through a merger transaction that first closed on September 29, 2020 (the "Original Merger").

61.    A few months after the first closing, Akademos determined that the Plan and Agreement of Merger for the Original Merger was not properly approved by the stockholders of BAHI and, as a result, the Original Merger was defective pursuant to Section 251(c) of the General Corporation Law of the State of Delaware (the "DGCL"). As a result, the Company filed a Certificate of Correction with the Secretary of State of the State of Delaware on December 15, 2020, pursuant to which the Original Merger was canceled and became null and void.

62.    On December 22, 2020, the Board again approved the BAHI Acquisition on the same economic terms as it had previously approved it three months earlier.

63.    Approximately a year before the BAHI Acquisition, Akademos had retained an independent firm to perform a 409A valuation.

64.    The 409A valuation, which the Board approved, valued the total equity of Akademos at $32.03 million.  It valued the common stock of Akademos, for purposes of Internal Revenue Code § 409A, at $13.411/share, and further adjusted its valuation to $8.717/share based on a lack of marketability discount of 35%.

65.    In June 2020, just prior to the BAHI Acquisition, Akademos CEO Raj Kaji reported to the Board that Akademos had closed out the sales year with 22 deals, which was a record high for Akademos and three times higher than the previous year. However, the Company also lost its largest account by GMV, the City Colleges of Chicago, during the same calendar year.

66.    Under the terms of the BAHI Acquisition approved by the Board, BAHI acquired Akademos for $12.5 million.

67.    Because of Akademos' outstanding indebtedness and liquidation preferences, primarily to KV and BAHI, the common stockholders were not entitled to any consideration under the BAHI Acquisition Merger Agreement.

68.    KV and BAHI eventually created a common stock pool of $51,324 or $0.24 per share of common stock. At the request of Akademos directors Smith and Shapiro, this common stock pool was negotiated up to $76,986, or $0.35 per share of common stock.

69.    At the time the Board approved the BAHI Acquisition, the Board consisted of seven members: Jacobs, Smith, Shapiro, the CEO, Kaji, and three directors appointed by KV, James Kohlberg, KV's founder, John Eastburn, KV's manager and co-founder, and Bill Youstra.

70.    Akademos acknowledged that a majority of the Board was interested in the BAHI Acquisition.  Eastburn, Kohlberg and Youstra were all interested in the BAHI Acquisition since BAHI was an affiliate of KV.

71.    Akademos also acknowledged that Kaji was interested in the BAHI Acquisition because Kaji would continue as Akademos' CEO after the acquisition and would receive options under the BAHI Acquisition.

72.    The terms of the BAHI Acquisition authorized an option pool representing twenty percent of Akademos' fully diluted capitalization as of immediately following the BAHI Acquisition.

73.    Additionally, Kaji's 2018 employment agreement guaranteed him a bonus of $500,000 in the case of a change of control.

74.    In approving the BAHI Acquisition, the Board held two votes.  First, the KV Directors and Kaji left the meeting and Shapiro and Smith voted in favor of the BAHI Acquisition while Jacobs voted against it.

15

75.    Next, the full Board, including the four directors that Akademos acknowledged were interested, voted on the BAHI Acquisition with all directors except Jacobs voting in favor of it.

### F. Plaintiffs' appraisal demand

76.    By letter dated January 8, 2021, Plaintiffs made a timely written demand for appraisal of their shares of Akademos common stock in compliance with 8 *Del. C.* § 262.

### G. 2023 Sale of Akademos

77.    In 2023, Vital Source Technologies, LLC acquired Akademos. That transaction closed on March 17, 2023.

## III.    ISSUES OF FACT AND LAW THAT REMAIN TO BE LITIGATED

78.    The Parties refer the Court to their respective pre-trial briefs, filed on or before September 7, 2023 (or at such time as ordered by the Court), for the facts each intends to prove at trial and the legal issues to be tried.

79.    The Parties reserve the right to move to amend their issues of fact in their post-trial briefs to conform to the evidence presented at trial.

## IV.    STATEMENT OF RELIEF SOUGHT

80.    Plaintiffs seek an Order from this Court entering final judgment in favor of Plaintiffs as follows:

a.     Determining the fair value of the Common Shareholders' shares of common stock in Akademos pursuant to 8 *Del C.* § 262;

b.     Ordering Respondent Akademos to pay such amount to Plaintiffs for their shares of Akademos' common stock;

c.     For an award of damages in favor of Plaintiffs of damages in an amount to be proven at trial;

d.     Awarding interest, as provided by 8 *Del. C.* §262(h), accruing from the effective date of the Akademos' merger with BAHI;

e.     For an award of any other statutory damages Plaintiffs are entitled to as provided by law;

f.     Ordering the Defendants to pay all expenses incurred by Plaintiffs, including, without limitation, costs, attorneys' fees, and fees and expenses of experts as provided by 8 *Del. C.* §262(j);

g.     For restitution and any other damages or relief available as provided by law or in equity and according to proof at trial; and,

h.     For such other and further relief as the Court may consider equitable, just, and proper.

81.    Defendants respectfully seek an order:

     a.      Denying Plaintiffs all the relief they seek.

     b.      Finding in Defendants' favor on all claims.

## V.    AMENDMENTS TO THE PLEADINGS

82.    The Parties do not currently contemplate any amendments to the pleadings.  However, the Parties reserve the right to seek leave to amend their pleadings pursuant to Court of Chancery Rule 15(b) to conform to the issues raised in their pre-trial briefs and the evidence presented at the hearing and also reserve the right to object to any such amendments by another Party.

## VI.    WITNESSES

### A.    PLAINTIFFS' WITNESSES

83.    Plaintiffs identify the following individuals as witnesses whom Plaintiffs may call at trial live:

    a.  Brian Jacobs

    b.  Jean-Louis Velaise

    c.  Jesse Ultz (ASA) (expert witness)

    d.  James Kohlberg

    e.  John Eastburn

    f.  Raj Kaji

    g.  Bill Youstra

    h.  Gary Shapiro

    i.  Burck Smith

    j.  Joe Daly

    k.  Luca Paindelli

    l.  Mark Miller, Managing Partner, Good Harbor Partners

    m. Lawrence Berger, Co-founder and Partner, Ames Watson

84.    Plaintiffs reserve all rights to: (i) call at trial the foregoing or other witnesses, if needed, whether or not previously identified, for rebuttal or impeachment purposes; (ii) call at trial witnesses on Defendants' list of trial witnesses to testify at trial, either live or by deposition, as part of Plaintiffs' case-in-chief; (iii) rely upon the testimony of any witnesses called by Defendants to testify at trial, either live or by deposition; (iv) not to call any of the foregoing witnesses live and to rely on deposition testimony, for the above-mentioned or any other witnesses, to the extent permitted by the Court of Chancery Rules and the Delaware Uniform Rules of Evidence; and (v) amend or supplement this witness list with good cause, including to qualify documents for admission.

## B.    DEFENDANTS' WITNESSES

85.    Defendants identify the following individuals as witnesses whom Defendants may call at trial live:

    a.  Brian Jacobs

    b.  Dale Kutnick

    c.  David G. Clarke, ASA

    d.  Jesse A. Ultz, CFA, ASA

    e.  Raj Kaji

    f.  John Eastburn

    g.  Gary Shapiro

    h.  Burck Smith

    i.  James A. Rowan, Partner, Parchman, Vaughan & Company L.L.C.

86.    Defendants reserve all rights to: (i) call at trial the foregoing or other witnesses, if needed, whether or not previously identified, for rebuttal or impeachment purposes; (ii) call at trial witnesses on Plaintiffs' list of trial witnesses to testify at trial, either live or by deposition, as part of Defendants' case-in-chief; (iii) rely upon the testimony of any witnesses called by Plaintiffs to testify at trial, either live or by deposition; (iv) not to call any of the foregoing witnesses live and to rely on deposition testimony, for the above-mentioned or any other witnesses, to the extent permitted by the Court of Chancery Rules and the Delaware Uniform Rules of Evidence; and (v) amend or supplement this witness list with good cause, including to qualify documents for admission.

## C.    GENERAL

87.    Each Party reserves its right to introduce in evidence, including through post-trial briefs, any deposition testimony in the case, including deposition testimony that was not introduced live or at trial.

88.    The Parties agree that witnesses controlled by the Party will be made available for trial, even if the Party controlling the witness chooses to remove that witness from its trial list.

89.    The Parties may narrow their witness lists up to and including the time of trial, and they may call other persons to testify in rebuttal or for impeachment.

90.    Each Party reserves its right to seek in good faith to supplement its witness list up to and including the time of trial, and each Party reserves the right to object to any such attempt to supplement.

91.    Each Party shall promptly notify the opposing Party of any changes to its respective witness list.

92.    The Parties reserve the right to: (a) elicit and introduce testimony (live or by deposition) of any person identified by a Party as an expected trial witness (live or by deposition) or any witness actually called by a Party; (b) rely on deposition testimony of any witness whose deposition was taken in this action as though such testimony was elicited during trial, as permitted by the Court of Chancery Rules and the Delaware Uniform Rules of Evidence, subject to each Party

reserving its right to object; (c) elicit and introduce testimony (live or by deposition) from any witness(es) who may testify for the purpose of offering impeachment or rebuttal testimony, whether or not any such witness was previously identified; (d) object to any live trial testimony offered by any witness not identified in this Pre-Trial Order; and (e) object at trial and/or to instruct witnesses not to answer questions posed by any Party to protect from disclosure privileged documents or communications, including documents and communications protected by the attorney work product doctrine or any other applicable privilege or protection.

## VII. AGREEMENTS REGARDING THE PRESENTATION OF LIVE AND DEPOSITION TESTIMONY

### A. PRESENTATION OF WITNESSES

93.    Witnesses shall not be called more than once, except to the extent they are called in rebuttal.  A Party may call an adverse Party witness in its own case, but the Party with whom the witness is affiliated may conduct a direct examination first, followed by a cross examination by the adverse Party (which shall not be limited to the scope of the direct examination), and re-direct and re-cross if necessary.  The scope of any re-direct examination shall be limited to the scope of cross examination, and the scope of any re-cross examination shall be limited to the scope of the re-direct examination.

94.    Plaintiffs will proceed with their case-in-chief first, except that the Parties agree that all experts will be presented after the presentation of all fact

witnesses and that Plaintiffs' case-in-chief will remain open until Plaintiffs' experts have been presented.  The Parties will simultaneously exchange the expected order of their live witnesses no later than 5:00 p.m. Eastern time on September15, 2023, or at such other time to be agreed to by the parties.

95.    If the order of the witnesses changes or a Party decides not to call a designated witness, the Party will provide notice of the change to the opposing Party by 6:00 p.m. Eastern time on the day before the relevant witness is set to testify.

96.    Non-party fact witnesses will be sequestered during trial prior to their testimony.

97.    Expert witnesses need not be sequestered during trial.

**B.    DEPOSITION TESTIMONY**

98.    Deposition transcripts may be lodged and used by any party for any purpose. On or before Friday, September 14, 2023, or at another such time that the Court orhers, the parties will jointly lodge every deposition transcript and errata sheet for all depositions taken in the Action. All deposition transcripts lodged with the Court will be admitted into evidence subject to the resolution of any objections made during trial or in post-trial briefing. The parties will provide to the Court an index of deposition exhibits with cross references to corresponding joint trial exhibits. For the avoidance of doubt, the lodging of deposition testimony with the Court or any other presentation of deposition testimony is without prejudice to any

23

party's objection to the admissibility of such testimony, including but not limited to in regard to any party's motion or request that the Court preclude or exclude such testimony.

99.    Deposition testimony and any deposition exhibits shall become part of the record to the extent they are cited in the parties' post-trial briefs or are used at trial. The merits of any objections to particular testimony or exhibits (unless resolved at or before trial) will be addressed in the parties' post-trial briefs.

100.    The parties intend to discuss at the pretrial conference whether the Court will require the parties to exchange deposition designations. The parties shall not exchange deposition designations, counter-designations, or reply designations. Each party reserves any and all objections to the admissibility of deposition testimony. In addition, any party shall remain free to address the weight, if any, the Court should place on any such deposition testimony that is admitted.

101.    Any party may use for any purpose permitted by the Court of Chancery Rules any deposition of a witness taken in this case in connection with the trial of this Action. The admissibility of such deposition testimony shall be subject to the Court's determination of any evidentiary objection made by a party as if the deponent were testifying live at trial. The agreement regarding the use of deposition testimony shall not affect the right of any party to compel any adverse party or

nonparty witness to testify live at trial. In addition, the parties shall remain free to argue about the weight the Court should place on any such testimony that is admitted.

## VIII.  TRIAL EXHIBITS

102.  All exhibits that the Parties intend to use at trial, excluding demonstratives, shall be identified on the Joint Exhibit List.  A copy of the Joint Exhibit List is attached hereto as Exhibit A.  The Parties have made and will continue to make a good faith effort to identify on the Joint Exhibit List prior to trial all of the exhibits that they intend to use.  Nevertheless, the Parties reserve their rights to add additional exhibits in good faith until the close of trial.  If necessary, the Parties shall submit an up-to-date Joint Trial List to the Court at the commencement of trial.  The Joint Exhibit List will identify each exhibit by unique JX number, date, a brief description, Bates number (if applicable), and deposition exhibit number (if applicable).  The Joint Exhibit List shall be in chronological order, except that any exhibits added after the attached Exhibit A is filed will be added as the next consecutive numbers at the end of the list, with a block of JX numbers reserved for such exhibits.

103.  Any Party supplementing the Joint Exhibit List shall simultaneously provide the other Party copies of any non-produced exhibit(s) to be added to the Joint Exhibit List.  The Party supplementing the Joint Exhibit List shall use its best efforts to provide notice to the other Party of the supplemental exhibit(s) by 7:00

p.m. Eastern time on the night prior to when the Party supplementing the Joint Exhibit List intends to use the supplemental exhibit(s) at trial.

104.   By including a document on the Joint Exhibit List, the Parties do not waive the right to argue that the exhibit is wholly inadmissible or admissible only for a limited purpose and/or to argue as to the weight or significance of such exhibit.

105.   All exhibits on the Joint Exhibit List shall be contained in the trial exhibit binders provided to the Court, with the exception of native Excel files or other voluminous files that the Parties agree cannot readily be printed in a usable format or a format that reflects the characteristics of the native file or that the Parties otherwise agree will be presented only in native or electronic format.  The Parties will provide a flash drive or other storage devices containing the native versions of any Excel files or other voluminous files from the Joint Exhibit List that the Parties intend to submit as trial exhibits.  For any exhibits presented only in native format, a slipsheet stating "Produced in Native" or "Produced Electronically" (or similar) shall be included in the trial exhibit binders.  Native or electronic versions presented to a witness shall be entered in the record, subject to objections, in the same manner as other trial exhibits, notwithstanding their presentation as native versions.

106.   By September 15, 2023, or at such other time as ordered by the Court, Plaintiffs will prepare and deliver to the Court three flash drives containing a consolidated, electronic set of searchable versions of the trial exhibits and arrange

26

for the printing and assembling of three sets of tabbed exhibit binders for the Court. The Parties will split evenly the costs of printing and assembling the three sets of trial exhibit binders.  If a Party intends to use a witness binder, each Party is individually responsible for preparing separate binders containing the exhibits that the examining counsel expects to reference when examining a particular witness.  If used, the examining Party shall provide two copies of any such witness binder to opposing counsel and one copy to the Court at the beginning of the relevant examination and shall bear the costs associated with such copies.

107.   Once the electronic set of trial exhibits is marked, Plaintiffs or the vendor preparing the trial exhibits will provide Defendants with a disk or FTP link containing electronic copies of all the marked trial exhibits (with the JX number indicated in the file name for the document).

108.   With respect to any graphs, charts, summaries, and demonstrative exhibits to be used by any Party during the trial, the Parties shall exchange such demonstrative exhibits by 7:00 p.m. Eastern time on the evening before the day that the anticipated demonstrative exhibit will be used.  The Parties reserve the right to object to any demonstrative exhibit.

109.   Objections to exhibits shall be noted on the Joint Exhibit List or made at trial (if an exhibit is used as evidence at trial or in post-trial briefing), and the merits of such objections shall be addressed in the post-trial briefing, unless resolved

27

during the trial.  The Parties shall make a good effort to note their written objections
to the exhibits on the Joint Exhibit List by September 15, 2023, or such other time
as ordered by the Court.

110.    Unless otherwise noted on the Joint Exhibit List or, with respect to any
document not listed on the Joint Exhibit List, when such document is used at trial,
the Parties stipulate and agree that documents produced in this litigation are
authentic for the purposes of admission at trial.  This stipulation does not waive the
right of any Party to object on other grounds to the admission of a particular exhibit
at trial, to note any other objection to a specific exhibit submitted to the Court, or
otherwise argue as the evidentiary weight that should be provided any such exhibit.

111.    Subject to any objection raised at trial or in the post-trial briefing, any
exhibit from the Joint Exhibit List used at trial or cited in a Party's post-trial brief or
argument shall be deemed admitted in evidence and part of the record.

## IX.    CONFIDENTIALITY

112.    In accordance with Paragraph 25 of the Stipulation and Order for the
Production and Exchange of Confidential and Highly Confidential Information
entered by Court on September 26, 2022 (the "Protective Order"), "[i]n the event
that any Confidential Discovery Material or Highly Confidential Discovery Material
is used in open court during any court proceeding or lodged as a trial exhibit, the
material shall lose its confidential status and become part of the public record, unless

the Producing Party applies for and obtains an order from this Court specifically maintaining the confidential status of particular material." The Parties anticipate that material designated "Confidential" or "Highly Confidential" will be presented at trial. In accordance with Paragraph 25 of the Protective Order, the Parties will "confer in good faith on such procedures that may be necessary or advisable to protect the confidentiality of any such Confidential Discovery Material or Highly Confidential Discovery Material" prior to trial, including a joint motion to seal the court room if necessary.

## X.    ESTIMATED TRIAL TIME

113.   A four-day trial is scheduled to be held on September 18-20, 2023 and October 2, 2023, to the extent necessary, beginning each day at 9:15 a.m., in Wilmington, Delaware.

114.   Trial time will be evenly divided with Plaintiffs having one half and Defendants having the other half. For purposes of this computation, each side will be charged with all of the time its attorneys spend questioning a witness, whether on direct examination, cross-examination, redirect examination, video testimony, or otherwise, and making argument to the Court. Unless otherwise ordered by the Court, time used by a Party to present or defend in-trial motions shall be charged to that Party. Unless otherwise ordered by the Court, time used by the Court, including time spent resolving in-trial motions and evidentiary issues, shall be split equally

between each Party. Time spent by the Court questioning a witness is divided evenly between the Parties.

115.    Each side will keep track of its own time and confer at the end of each trial day with regard to their remaining time.

## XI.    PRE-TRIAL CONFERENCE

116.    The pre-trial conference shall take place on September 12, 2023 at 3:15 p.m. by telephone.  Counsel for Plaintiffs will circulate a dial-in for the call and will initiate the phone call to the Court.

## XII.    EVIDENTIARY AND OTHER ISSUES FOR THE PRE-TRIAL CONFERENCE

117.    Plaintiffs have filed a motion in limine to exclude the testimony of defendants' expert, David G. Clarke, ASA related to the merger process that led to the BAHI Acquisition.  Defendants have filed an opposition to this motion.

118.    Defendants have filed a motion in limine to preclude testimony and argument regarding the Akademos Certificate of Incorporation.  Plaintiffs have filed an opposition to this motion.

119.    The Parties request the opportunity at the pre-trial conference to discuss the most practical and efficient means to preserve confidentiality of sensitive non-public information (*see supra* Section IX).

## XIII.  AMENDMENT OF THE PRETRIAL ORDER

120.   This Pre-Trial Order may be amended upon application to the Court by any Party for good cause shown or by agreement of the Parties with approval of the Court.

**BALLARD SPAHR LLP**

*/s/  Elizabeth A. Sloan*
Elizabeth A. Sloan (#5045)
919 North Market Street, 11th Floor
Wilmington, DE 19801-3034
Phone: (302) 252-4465
Facsimile: (302) 252-4466
*sloane@ballardspahr.com*

*Attorneys for Plaintiffs*

**OF COUNSEL:**
Jason C. Spiro (*pro hac vice*)
Thomas M. Kenny (*pro hac vice*)
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Tel: (973) 232-0881
Fax: (973) 232-0887

**BUCHANAN    INGERSOLL    &
ROONEY PC**

*/s/  Geoffrey G. Grivner*
Geoffrey G. Grivner (# 4711)
Kody M. Sparks (# 6464)
500 Delaware Avenue, Suite 720
Wilmington, DE 19801
Telephone:  (302) 552-4200
Facsimile:   (302) 552-4295
*geoffrey.grivner@bipc.com*
*kody.sparks@bipc.com*

*Attorneys for Defendants*

**OF COUNSEL:**
Gavin J. Rooney (*pro hac vice*)
LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 419-5853
Facsimile: (973) 597-2473
*grooney@lowenstein.com*

*Pro hac vice counsel for Defendants Kohlberg Ventures LLC and Bay Area Holdings, Inc.*

SO ORDERED this _____ day of _____, 2023.


_____
Vice Chancellor J. Travis Laster

EFiled:  Sep 05 2023 05:05PM EDT
Transaction ID 70797362
Case No. 2021-0346-JTL

# EXHIBIT A

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 1 | 6/30/2014 | Akademos, Inc. Financial Statements for the Year Ended June 30, 2014 | Defendants00045799 | Defendants00045811 | |
| 2 | 7/28/2014 | Akademos, Inc. Subordinated Convertible Promissory Note, Kohlberg Ventures, LLC | Defendants00126720 | Defendants00126742 | |
| 3 | 11/13/2014 | Akademos, Inc. Subordinated Convertible Promissory Note, Kohlberg Ventures, LLC | Defendants00126689 | Defendants00126719 | |
| 4 | 4/22/2015 | Email from Jacobs to Velaise re: Amazon Makes a Push on College Campuses - WSJ | P001004 | P001006 | |
| 5 | 4/23/2015 | 409A Valuation, created on April 23, 2015 | P001057 | P001100 | Deposition Exhibit Jacobs 7 |
| 6 | 4/25/2015 | Presentation: Board Meeting, April 27, 2015 | P001030 | P001056 | |
| 7 | 4/25/2015 | Akademos, Inc., Valuation from Preferred Return as of March 15, 2015 (discussion draft - not final) | P001057 | P001100 | |
| 8 | 6/30/2015 | Akademos, Inc. Financial Statements and Independent Auditor's Report, June 30, 2015 | Defendants00045812 | Defendants00045832 | |
| 9 | 8/7/2015 | Akademos board call | P022713 | P022713 | |
| 10 | 10/28/2015 | Akademos BOD meeting | P022714 | P022714 | |
| 11 | 11/8/2015 | Email from Youstra to Jennifer Schmidt Youstra re: Waterfall/common consent | Defendants00095811 | Defendants00095812 | |
| 12 | 11/8/2015 | email from Bill Youstra to John Eastburn commenting on Brian Jacobs email re: BNE transaction | Defendants00095821 | Defendants00095822 | Deposition Exhibit Youstra 1 |
| 13 | 3/6/2016 | Email from Brian Jacobs to James Kohlberg re: Akademos (private & confidential) | P003352 | P003354 | |
| 14 | 6/30/2016 | Akademos, Inc. Financial Statements and Independent Auditor's Report, June 30, 2016 and 2015 | Defendants00045833 | Defendants00045855 | |
| 15 | 8/12/2016 | 409A Valuation, created on August 12, 2016 | P005462 | P005507 | |
| 16 | 9/25/2016 | Email from Brian Jacobs to James Kohlberg re: Thank you | P005659 | P005660 | |
| 17 | 11/9/2016 | Native: Board Financials 11.9.16.xlsx | P006125 | P006125 | |
| 18 | 12/12/2016 | Kohlberg Equity Term Sheet for Series B Preferred Stock Investment in Akademos, Inc. | Defendants00126775 | Defendants00126781 | |
| 19 | 12/28/2016 | Fourth Amended and Restated Certificate of Incorporation of Akademos, Inc. | Defendants00100417 | Defendants00100443 | |
| 20 | 12/28/2016 | Secretary's Certificate | Defendants00111896 | Defendants00111926 | |
| 21 | 12/28/2016 | Akademos - Series B Preferred Stock Purchase Agreement | Defendants00126754 | Defendants00126774 | |
| 22 | 12/28/2016 | Written Consent of the Board of Directors of Akademos Inc. (Series B) | Defendants00126815 | Defendants00126834 | |
| 23 | 12/28/2016 | Written Consent and Waiver of the Stockholders of Akademos, Inc. (Series B) | Defendants00126835 | Defendants00126845 | |
| 24 | 1/9/2017 | 409A Valuation, created on January 9, 2017 | P005462 | P005507 | |
| 25 | 1/19/2017 | Brian Jacobs memo on direction of company | P007664 | P007667 | Deposition Exhibit Kohlberg 3 |
| 26 | 2/3/2017 | Warrant to Purchase Shares of Preferred Stock of Akademos Inc. - Akademos – WTI Warrant (LS 2-2) | P007824 | P007838 | |
| 27 | 2/22/2017 | Email from Jacobs to Velaise re: One other thought | P008245 | P008246 | |
| 28 | 3/6/2017 | Email from Jacobs to Velaise re: JS stock purchase | P008329 | P008330 | |
| 29 | 3/8/2017 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., March 8, 2017 | Defendants00032956 | Defendants00032969 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 30 | 5/17/2017 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., May 17, 2017 | Defendants00032924 | Defendants00032927 | |
| 31 | 5/18/2017 | Presentation: May 18, 2017 Board Meeting | Defendants00032930 | Defendants00032954 | |
| 32 | 6/28/2017 | Presentation: June 28, 2017 Board Meeting | Defendants00032910 | Defendants00032922 | |
| 33 | 6/28/2017 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., June 28, 2017 | Defendants00099044 | Defendants00099045 | |
| 34 | 6/30/2017 | Akademos Audited Financial Statement | Defendants00024801 | Defendants00024824 | |
| 35 | 7/11/2017 | Akademos, Inc. Fair Market Vlue of the Common Stock as of December 31, 2016 | Defendants00098980 | Defendants00099027 | |
| 36 | 9/13/2017 | Presentation: September 13, 2017 Board Meeting | Defendants00099029 | Defendants00099042 | |
| 37 | 11/16/2017 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc. | Defendants00033982 | Defendants00033983 | |
| 38 | 12/13/2017 | Presentation: December 13, 2017 Board Meeting | Defendants00033970 | Defendants00033980 | |
| 39 | 3/1/2018 | Subordinated Convertible Note | Defendants00037946 | Defendants00037957 | |
| 40 | 3/9/2018 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc. | Defendants00033550 | Defendants00033553 | |
| 41 | 3/12/2018 | email from Eastburn to Youstra stating he would buy Brian's shares for $500,000 just to be rid of them | Defendants00095879 | Defendants0095880 | Deposition Exhibit Eastburn 6 |
| 42 | 3/12/2018 | Email from Brian Jacobs to Bill Youstra re: panOpen | P009886 | P009888 | |
| 43 | 3/13/2018 | email from Eastburn to Jacobs about purchasing his shares and asking for a price | Defendants00095886 | Defendants00095887 | Deposition Exhibit Eastburn 1 |
| 44 | 3/13/2018 | Email from John Eastburn to Bill Youstra and James Kohlberg re: No deal for Brian's shares | Defendants00116533 | Defendants00116533 | |
| 45 | 3/13/2018 | Email from Brian Jacobs to John Eastburn re: Akademos shares | P009938 | P009938 | |
| 46 | 3/13/2018 | email from Jacobs to Velaise stating that Eastburn is offering him $10 per share | P009946 | | Deposition Exhibit Velaise 11 |
| 47 | 3/14/2018 | Email from Jacobs to Velais re: Kohlberg note documents | P010025 | P010026 | |
| 48 | 3/16/2018 | Email from Brian Jacobs to Dale Kutnick re: Akademos financing/activity | Defendants00094480 | Defendants00094480 | |
| 49 | 3/16/2018 | Presentation: March 9, 2019 Board Meeting | Defendants00094481 | Defendants00094498 | |
| 50 | 3/16/2018 | Email from Brian Jacobs to Dale Kutnick re: Akademos financing/activity | P010094 | P010094 | |
| 51 | 3/16/2018 | Presentation: March 9, 2019 Board Meeting | P010095 | P010112 | |
| 52 | 3/20/2018 | Subordination Agreement, Akademos, Inc. among Bay Area Holdings, Inc. and Venture Lending & Leasing VII and VIII | Defendants00030775 | Defendants00030820 | |
| 53 | 3/27/2018 | Executed Warrant Agreement (3.27.2018) | Defendants00024855 | Defendants00024865 | |
| 54 | 4/24/2018 | email from John Eastburn to Bill Youstra and Gary Shapiro re: replacing Akademos CEO | Defendants00030898 | | Deposition Exhibit Youstra 3 |
| 55 | 4/24/2018 | J. Squires signed Employment Contract, April 11, 2011 | Defendants00030899 | Defendants00030906 | |
| 56 | 4/24/2018 | Akademos Cap Table Updated for Aug 31 2017 | Defendants00098945 | Defendants00098978 | |
| 57 | 4/25/2018 | Email from Velaise to Jacobs re: Talk today | P010371 | P010371 | |
| 58 | 5/2/2018 | Raj Kaji Employment Agreement | Defendants00125506 | Defendants00125513 | |
| 59 | 5/4/2018 | Recording of Eastburn Conversation | P0022712 | | |
| 60 | 5/5/2018 | email from Gary Shapiro to John Eastburn that Brian Jacobs will be a distraction for Raj Kaji | Defendants00087568 | | Deposition Exhibit Shapiro 1 |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 61 | 5/7/2018 | Email from Jacobs to Velaise re: March 13 call | P010411 | P010411 | |
| 62 | 5/9/2018 | Confidential Information Presentation prepared for Akademos by Berkery Noyes Securities | Defendants00000332 | Defendants00000377 | |
| 63 | 5/9/2018 | Warrant agreement 5.9.2018 | Defendants00126743 | Defendants00126753 | |
| 64 | 5/10/2018 | Email from Brian Jacobs to John Eastburn re: John Squires Transition | Defendants00087699 | Defendants00087700 | |
| 65 | 5/11/2018 | Email from Eastburn to Kaji and Jacobs re: Phone call Tuesday 11am et/8am pt | P010431 | P010431 | |
| 66 | 5/14/2018 | email from Brian Jacobs to JL Velaise forwarding notes from May 4, 2018 meeting with John Eastburn | P010436 | P010439 | |
| 67 | 5/15/2018 | Niraj (Raj) Kaji | P022715 | P022717 | |
| 68 | 5/16/2018 | Presentation: May 16, 2018 Board Meeting | Defendants00033521 | Defendants00033549 | |
| 69 | 5/16/2018 | Presentation: Finance Presentation Board of Directors Meeting, May 16, 2018 | Defendants00033554 | Defendants00033560 | |
| 70 | 5/16/2018 | Board meeting | P022718 | P022719 | |
| 71 | 6/25/2018 | Email from Brian Jacobs to James Kohlberg re: Letter to you regarding Akademos (confidential) | P010712 | P010712 | |
| 72 | 6/25/2018 | Letter from Brian Jacobs to Jim Kohlberg re: asking for intervention | P010713 | P010714 | |
| 73 | 6/28/2018 | Presentation: June 28, 2018 Board Meeting | Defendants00000499 | Defendants00000516 | |
| 74 | 6/28/2018 | email from Bill Youstra to Gary Shapiro re: Brian Jacobs request to have board meeting minutes reflect his abstention to appointing Kaji as CEO | Defendants00088136 | Defendants00088138 | Deposition Exhibit Youstra 4 |
| 75 | 6/30/2018 | Akademos Audited Financial Statement | Defendants00016584 | Defendants00016605 | |
| 76 | 7/1/2018 | Call with Raj Kaji | P022721 | P022721 | |
| 77 | 7/22/2018 | Email from R. Kaji to J. Daly re 409A | Defendants00034533 | Defendants00034533 | |
| 78 | 7/22/2018 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc. , September 10, 2015 | Defendants00034534 | Defendants00034541 | |
| 79 | 7/22/2018 | Presentation: Board Meeting, October 28, 2015 | Defendants00034542 | Defendants00034557 | |
| 80 | 8/23/2018 | 409A Valuation, created on August 23, 2018 | Defendants00035837 | Defendants00035882 | Deposition Exhibit Jacobs 8 |
| 81 | 8/28/2018 | Presentation: August 2018 Forecast discussion | Defendants00011517 | Defendants00011526 | |
| 82 | 9/6/2018 | Presentation: Board Meeting, September 6, 2018 | Defendants00000562 | Defendants00000582 | |
| 83 | 9/6/2018 | Presentation: Board Meeting Addendum, September 6, 2018 | Defendants00035657 | Defendants00035659 | |
| 84 | 9/10/2018 | Presentation: Quarterly All-Hands Meeting, September 10, 2018 | Defendants00035799 | Defendants00035809 | |
| 85 | 9/10/2018 | Email from J. Daly to J. Eastburn re: 409A Valuation | Defendants00035836 | Defendants00035836 | |
| 86 | 9/10/2018 | Akademos, Inc., Valuation from Preferred Return as of 6/30/2018 | Defendants00035837 | Defendants00035882 | |
| 87 | 9/11/2018 | email from Eastburn to Daly accepting $30mm valuation | Defendants00035933 | | Deposition Exhibit Eastburn 7 |
| 88 | 9/11/2018 | Email from Youstra to Eastburn re: Call next week | Defendants00095957 | Defendants00095958 | |
| 89 | 9/13/2018 | email from Eastburn to Kohlberg saying that Jacobs wants Kohlberg to replace Eastburn on the Board | Defendants00031013 | | Deposition Exhibit Eastburn 8 |
| 90 | 9/20/2018 | John Eastburn | P022722 | P022724 | |
| 91 | 10/19/2018 | email from Bill Youstra to Jack Youstra, forwarding Akademos strategy brief | Defendants00096018 | Defendants00096019 | Deposition Exhibit Youstra 6 |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 92 | 10/19/2018 | email from Bill Youstra to Jim Kohlberg suggesting Kohlberg occupy Brian Jacobs board seat | Defendants00095960 | | Deposition Exhibit Youstra 7 |
| 93 | 10/19/2018 | letter from Brian Jacobs to Jim Kohlberg requesting that Kohlberg join the Akademos Board | Defendants00036971 | | Deposition Exhibit Jacobs 9 |
| 94 | 10/22/2018 | Email from Eastburn to Kaji re: Common holder letter | Defendants00036970 | Defendants00036970 | |
| 95 | 10/22/2018 | Akademos Common Holder Letter to Jim Kohlberg, October 19, 2018 | Defendants00036971 | Defendants00036971 | |
| 96 | 10/31/2018 | Email from Niraj Kaji to John Eastburn Dated re: More data | Defendants00037421 | Defendants00037423 | |
| 97 | 11/5/2018 | Email from J. Eastburn to N. Kaji re: Renewal of loan agreement | Defendants00108355 | Defendants00108355 | |
| 98 | 11/5/2018 | Warrant for the Purchase of Shares of Series B Preferred Stock, March 8, 2017 | Defendants00108356 | Defendants00108365 | |
| 99 | 11/9/2018 | Pre-board meeting call with Raj Kaji | P022725 | P022725 | |
| 100 | 11/14/2018 | Presentation: November 14, 2018 Board Meeting | Defendants00038435 | Defendants00038449 | |
| 101 | 11/14/2018 | Smith Stock Option Agreement | Defendants00039019 | Defendants00039030 | |
| 102 | 11/14/2018 | Akademos, Inc. Warrant for the Purchase of Shares of Series B Preferred Stock | Defendants00108204 | Defendants00108214 | |
| 103 | 11/19/2018 | email from Kaji to Smith re: Akademos is on path to $40mm topline | Defendants00039031 | Defendants00039032 | Deposition Exhibit Kaji 1 |
| 104 | 12/12/2018 | Email from Eastburn to Kaji re: December 14 2018 Operational board presentation v02.pptx | Defendants00040347 | Defendants00040348 | |
| 105 | 12/14/2018 | Presentation: December 14, 2018 Board Meeting | Defendants00041096 | Defendants00041119 | |
| 106 | 1/14/2019 | Confidential Information Presentation prepared for Akademos by Berkery Noyes Securities | Defendants00042335 | Defendants00042380 | |
| 107 | 1/28/2019 | Presentation: Sales and Marketing Process Overview | Defendants00042762 | Defendants00042770 | |
| 108 | 2/12/2019 | Akademos Proprietary & Confidential Financial Review for City Colleges of Chicago | Defendants00042988 | Defendants00042996 | |
| 109 | 2/14/2019 | Akademos November 2918 Strategy Brief | Defendants00096020 | Defendants00096070 | |
| 110 | 2/16/2019 | Email from John Eastburn to James Kohlberg re: Talk before Akademos call? | Defendants00000850 | Defendants00000850 | |
| 111 | 2/19/2019 | Presentation: February 19, 2019 Board Meeting | Defendants00043831 | Defendants00043852 | |
| 112 | 3/1/2019 | First Amendment to Subordinated Convertible Note | P012075 | P012078 | |
| 113 | 3/4/2019 | Email from Kaji to Eastburn re: FW: Bridge | P012022 | P012022 | |
| 114 | 3/6/2019 | Email from R. Kaji to G. Shapiro re FW: Bridge | Defendants00044316 | Defendants00044316 | |
| 115 | 3/6/2019 | Term Sheet for Potential Investment in Akademos, Inc., Last Updated: 3/6/2019 (Jacobs 16) | Defendants00044317 | Defendants00044320 | |
| 116 | 3/6/2019 | Email from R. Kaji to J. Eastburn re: follow up on conversation re bridge | Defendants00044321 | Defendants00044321 | |
| 117 | 3/6/2019 | Email from Kaji to Jacobs re: FW: Bridge (Jacobs-15) | P012017 | P012017 | |
| 118 | 3/6/2019 | Term Sheet for Potential Investment in Akademos, Inc., Convertible Subordinated Promissory Note (Jacobs-16) | P012018 | P012021 | |
| 119 | 3/6/2019 | email from Kaji to Jacobs re: draft financing from KV | | | Deposition Exhibit Jacobs 15 |
| 120 | 3/11/2019 | Presentation: March 11, 2019 Quarterly All Hands Meeting | Defendants00044336 | Defendants00044346 | |
| 121 | 3/12/2019 | Email from Eastburn to Kaji re: Brian | Defendants00031045 | Defendants00031046 | |
| 122 | 3/22/2019 | Email from Kaji to Jacobs re: Tuesday time | P012065 | P012065 | |
| 123 | 3/25/2019 | Email chain from Gary Shapiro to Jim Zaorski re: Follow up | Defendants00090398 | Defendants00090399 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 124 | 3/26/2019 | Minutes of a Meeting of the Board of Directors of Akademos, Inc., March 26, 2019 | Defendants00046521 | Defendants00046525 | |
| 125 | 3/26/2019 | Email from Velaise to Jacobs re: Call with Raj | P012308 | P012310 | |
| 126 | 3/26/2019 | Email from Jacobs to Kaji re: Tuesday time | P012314 | P012319 | |
| 127 | 3/27/2019 | Email from Niraj Kaji to Akademos Board re: Follow up from yesterday's board meeting | P012325 | P012325 | |
| 128 | 3/28/2019 | Email from J. Daly to A. Fuchs et al. re: Akademos Financing proposal | Defendants00044764 | Defendants00044765 | |
| 129 | 3/28/2019 | Term Sheet for Potential Investment in Akademos, Inc., Covertible Subordinated Promissory Note | Defendants00044766 | Defendants00044767 | |
| 130 | 4/9/2019 | email from Gary Shapiro to Raj Kaji suggesting that Akademos obtain a term sheet from Concise Capital to show Brian Jacobs that KV's financing terms are the best | Defendants00090494 | | Deposition Exhibit Shapiro 3 |
| 131 | 4/12/2019 | Email from J. Daly to G. Koach re: NDA Attached | Defendants00045304 | Defendants00045305 | |
| 132 | 4/12/2019 | Presentation: We Make Managing Course Materials Easy, April 2019 (Akademos Fundraising Deck) | Defendants00045310 | Defendants00045329 | |
| 133 | 4/12/2019 | CEO Report, CFO Report | Defendants00045331 | Defendants00045335 | |
| 134 | 4/12/2019 | Native file: Akademos Cap Table as of 4.8.2019.xlsx | Defendants00045336 | Defendants00045336 | |
| 135 | 4/16/2019 | Email from Glenn Koach to J. Daly re: Interest rate | Defendants00013052 | Defendants00013055 | |
| 136 | 4/16/2019 | Email from Kaji to Akademos Board re: Letter to Akademos Board | Defendants00090502 | Defendants00090502 | |
| 137 | 4/16/2019 | Spiro Harrison Letter | Defendants00090503 | | Deposition Exhibit Velaise 15 |
| 138 | 4/16/2019 | Letter to Akademos Board re: Akademos Financing Proposal | Defendants00098700 | Defendants00098708 | |
| 139 | 4/17/2019 | Email from Joe Daly to Raj Kaji re: List of parties contacted | Defendants00045553 | Defendants00045554 | |
| 140 | 4/17/2019 | Email from Kaji to Eastburn re: FW: Interest rate | Defendants00045555 | Defendants00045557 | |
| 141 | 4/19/2019 | Pre board meeting call with Raj | P022726 | P022726 | |
| 142 | 4/25/2019 | Presentation: April 25, 2019 Board Meeting Executive Committee (addendum) | Defendants00046526 | Defendants00046530 | |
| 143 | 4/25/2019 | Presentation: April 25 2019 Board Meeting (final) | Defendants00046531 | Defendants00046583 | |
| 144 | 4/25/2019 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc. | Defendants00099487 | Defendants00099489 | |
| 145 | 4/29/2019 | Email from Niraj Kaji to Jacobs and Shapiro re: Term Sheet from AVID and latest funding information | P013146 | P013146 | |
| 146 | 4/29/2019 | Akademos-Avidbank Term Sheet, April 24, 2019 | P013147 | P013150 | |
| 147 | 5/1/2019 | Response Letter to J. Spiro | Defendants00102676 | Defendants00102680 | |
| 148 | 5/2/2019 | Minutes of a Meeting of the Board of Directors of Akademos, Inc. | Defendants00099490 | Defendants00099498 | |
| 149 | 5/3/2019 | Email from Velaise to Roberts, Daly, Squires, Kaji and others re: Shareholder consent request related to convertible note transaction | P013454 | P013455 | |
| 150 | 5/6/2019 | Email from John Eastburn to James Kohlberg re: Shareholder consent request related to convertible note transaction | Defendants00098584 | Defendants00098589 | |
| 151 | 5/6/2019 | Email from Eastburn to David Benjamin re: Shareholder consent request related to convertible note transaction | Defendants00119360 | Defendants00119364 | |
| 152 | 5/6/2019 | Letter to Akademos Board, April 16, 2019 | Defendants00119365 | Defendants00119373 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 153 | 5/6/2019 | January 19 Brian Jacobs Memo on Akademos | Defendants00119375 | Defendants00119377 | |
| 154 | 5/8/2019 | Email from G. Shapiro to R. Kaji re: Competitors and discussions | Defendants00090614 | Defendants00090614 | |
| 155 | 5/9/2019 | BAHI Warrant 5.9.2019 | Defendants00024825 | Defendants00024835 | |
| 156 | 5/9/2019 | Amended and Restated Subordination Agreement among Bay Area Holdings and Avidbank | Defendants00046813 | Defendants00046818 | |
| 157 | 5/9/2019 | Akademos, Inc. Subordinated Convertible Promissory Note, Bay Area Holdings, Inc. | Defendants00046819 | Defendants00046830 | |
| 158 | 5/21/2019 | Email from Jacobs to T. Kutnick re: Akademos legal next steps | P013584 | P013585 | |
| 159 | 5/23/2019 | Email from Brian Jacobs to Jean-Louis Velaise re: offering my shares at a discount | P013598 | P013599 | |
| 160 | 6/3/2019 | Presentation: June 3, 2019 Quarterly All Hands Meeting | Defendants00047468 | Defendants00047477 | |
| 161 | 6/6/2019 | Email from Fuchs to Velaise re: offering my shares at a discount | P0022739 | P0022743 | |
| 162 | 6/7/2019 | Stock Transfer Form, signed by Velaise and Fuchs | P0022749 | P0022749 | |
| 163 | 6/11/2019 | Email from Aram Fuchs to Velaise re: offering my shares at a discount | P0022744 | | |
| 164 | 6/11/2019 | June 7, 2019 Stock Transfer Form, signed by Velaise and Fuchs | P0022749 | | |
| 165 | 6/20/2019 | Board call | P022720 | P022720 | |
| 166 | 6/23/2019 | Board meeting | P022727 | P022730 | |
| 167 | 6/24/2019 | Response Letter to Akademos Board re: Akademos Financing Proposal | Defendants00098715 | Defendants00098719 | |
| 168 | 6/24/2019 | Email from Jacobs to other plaintiffs re: Response letter, as sent | P014030 | P014030 | |
| 169 | 6/24/2019 | Spiro Harrison Letter | P014031 | P014035 | |
| 170 | 6/25/2019 | Presentation: June 25, 2019 Board Meeting Executive Committee (addendum) | Defendants00099499 | Defendants00099501 | |
| 171 | 6/25/2019 | Presentation: June 25, 2019 Board Meeting (final) | Defendants00099502 | Defendants00099537 | |
| 172 | 6/28/2019 | Email from J. Daly to B. Jacobs re: Waterfall calculation | Defendants00099542 | Defendants00099543 | |
| 173 | 6/28/2019 | Native: Cap Table as of June 26, 2019 with waterfall Final (2).xlsx | Defendants00099544 | Defendants00099544 | |
| 174 | 6/28/2019 | Email from Daly to Jacobs re: Waterfall calculation | P014043 | P014043 | |
| 175 | 6/28/2019 | Spreadsheet: Cap Table as of June 26, 2019 with waterfall Final (Akademos Waterfall Valuation) (KAJI-2) | P014044 | P014065 | |
| 176 | 6/30/2019 | Annex K - June 2019 Audited Financials, June 2020 Unaudited Financials, August 2020 | Defendants00001883 | Defendants00001916 | |
| 177 | 6/30/2019 | Akademos Tax Return | Defendants00119137 | Defendants00126686 | |
| 178 | 7/1/2019 | Akademos Proprietary & Confidential Financial Review for New Mexico State University | Defendants00048967 | Defendants00048975 | |
| 179 | 8/7/2019 | Akademos 409A Valuation, prepared by Preferred Return, execution copy created on August 7, 2019 | Defendants00001289 | Defendants00001348 | Deposition Exhibit Daly 1, Youstra 8, Kaji 18 |
| 180 | 8/7/2019 | Preferred Return 409A Valuation as of June 30, 2019 | Defendants00002755 | Defendants00002814 | |
| 181 | 8/9/2019 | Response Letter to J. Spiro re Akademos Financing Proposal | Defendants00098721 | Defendants00098725 | |
| 182 | 8/14/2019 | Call with Raj | P022731 | P022732 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 183 | 9/6/2019 | email from Burck Smith to Raj Kaji re: lack of value of common shares | Defendants00093252 | Defendants00093258 | Deposition Exhibit Smith 1, Kaji 3 |
| 184 | 9/9/2019 | Email from R. Kaji to B. Smith re: Board Comp | Defendants00051897 | Defendants00051898 | |
| 185 | 9/12/2019 | email from Smith to Kaji re: common value | Defendants00093260 | Defendants00093261 | |
| 186 | 9/16/2019 | email from Burck Smith to Raj Kaji re: board seat | Defendants00051897 | Defendants00051898 | Deposition Exhibit Smith 2 |
| 187 | 9/16/2019 | email from Raj Kaji to Burck Smith re: board compensation | Defendants00093262 | | Deposition Exhibit Smith 3 |
| 188 | 9/17/2019 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., dated September 17, 2019 | Defendants00021338 | | |
| 189 | 9/17/2019 | Presentation: Board of Directors Meeting, September 17, 2019 (final) | Defendants00052632 | Defendants00052681 | |
| 190 | 9/17/2019 | Presentation: September 17 2019 Board Meeting (addendum) | Defendants00099627 | Defendants00099629 | |
| 191 | 9/18/2019 | Email from R. Kaji to J. Eastburn re: Burck | Defendants00052701 | Defendants00052702 | |
| 192 | 10/16/2019 | Email from R. Kaji to fellow board members re: Akademos Board meeting docs and agenda | Defendants00105023 | Defendants00105023 | |
| 193 | 10/16/2019 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., June 25, 2019 | Defendants00105024 | Defendants00105029 | |
| 194 | 10/16/2019 | Smith Indemnification Agreement | Defendants00105034 | Defendants00105047 | |
| 195 | 10/21/2019 | Email from G. Shapiro to R. Kaji re: Two Things | Defendants00091397 | Defendants00091398 | |
| 196 | 10/21/2019 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc. , October 21, 2019 | Defendants00096748 | Defendants00096753 | |
| 197 | 10/21/2019 | October 21, 2019 Board Meeting Executive Committee (addendum) | Defendants00105064 | Defendants00105066 | |
| 198 | 10/21/2019 | email from Brian Jacobs to Raj Kaji expressing concern about Smith joining the Board | P015019 | P015021 | |
| 199 | 11/15/2019 | Presentation: NBC Akademos, November 15, 2019 | Defendants00003057 | Defendants00003067 | |
| 200 | 11/19/2019 | Native: Akademos Financial Summary 11.19.19.xlsx | Defendants00001205 | Defendants00001205 | |
| 201 | 11/21/2019 | Proposed Combination of Ambassador Education Solutions and Akademos, Draft for Discussion Purposes Only, November 20, 2019 | Defendants00054076 | Defendants00054080 | |
| 202 | 11/24/2019 | Summary of Indicative Terms and Conditions for the Merger of Nebraska Book Company and Akademos, Inc. | Defendants00003056 | Defendants00003056 | |
| 203 | 11/25/2019 | Email from N. Kaji to J. Daly re: Fwd: Can you send us the deck? | Defendants00120131 | Defendants00120134 | |
| 204 | 11/25/2019 | Summary of Indicative Terms and Conditions for the Merger of Nebraska Book Company and Akademos, Inc. | Defendants00120143 | Defendants00120143 | |
| 205 | 11/25/2019 | Native: Akademos Financial Summary 11.19.19.xlsx | Defendants00120144 | Defendants00120144 | |
| 206 | 11/27/2019 | Email from Jacobs to Kaji re: Talk today or over the holiday | P015076 | P015076 | |
| 207 | 12/2/2019 | Email from Shapiro to Kaji re: Board meeting this week | Defendants00105079 | Defendants00105079 | |
| 208 | 12/2/2019 | BAHI Affirmation of Guaranty; Affirmation of Subordination Agreement | Defendants00126810 | Defendants00126814 | |
| 209 | 12/2/2019 | Email from Jacobs to Kaji re: Off-cycle board meeting this week | P015085 | P015085 | |
| 210 | 12/3/2019 | Email from Kaji to Daly and Paindelli re: Touch Base | Defendants00054569 | Defendants00054571 | |
| 211 | 12/3/2019 | Native: Company B provided term sheet 2019.11.21 with added Company A thoughts 2019.12.02.xlsx | Defendants00054572 | Defendants00054572 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 212 | 12/3/2019 | Email from Kaji to Daly and Paindelli re: Draft board meeting slides for this week | Defendants00054593 | Defendants00054593 | |
| 213 | 12/4/2019 | Presentation: Off Cycle Board meeting 12/5/19 | Defendants00054650 | Defendants00054654 | |
| 214 | 12/4/2019 | Akademos Proprietary & Confidential Financial Review for Maricopa County Community College | Defendants00055892 | Defendants00055900 | |
| 215 | 12/5/2019 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc., December 5, 2019 | Defendants00097854 | Defendants00097855 | |
| 216 | 12/5/2019 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc., December 5, 2019 | Defendants00100546 | Defendants00100547 | |
| 217 | 12/10/2019 | Presentation: Board Meeting - Addendum Slides 12/10/19 | Defendants00001268 | Defendants00001269 | |
| 218 | 12/10/2019 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., December 10, 2019 | Defendants00001359 | Defendants00001360 | |
| 219 | 12/10/2019 | Presentation: Board meeting 12/10/19 (Operational Slides) | Defendants00096754 | Defendants00096792 | |
| 220 | 12/10/2019 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., December 10, 2019 | Defendants00100544 | Defendants00100545 | |
| 221 | 12/15/2019 | Email from Jacobs to Spiro and Velaise re: Board Governance | P015311 | P015312 | |
| 222 | 12/15/2019 | December 9, 2019 Notice to Stockholders regarding Board Governance | P015313 | P015313 | |
| 223 | 12/17/2019 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., September 17, 2019 | Defendants00001354 | Defendants00001358 | |
| 224 | 12/18/2019 | Email from Jacobs to T. Kutnick re: Confidential: Akademos activity | P015317 | P015318 | |
| 225 | 12/19/2019 | Email from M. Miller to Luca Paindelli re: Document to Go through when we are Together | Defendants00055141 | Defendants00055142 | |
| 226 | 12/19/2019 | Presentation: Good Humor Partners Proposal for Akademos, December 19, 2019 | Defendants00055143 | Defendants00055152 | |
| 227 | 12/24/2019 | Email from John Eastburn to James Kohlberg re: Nebraska Books in trouble with 10 days to default | Defendants00031331 | Defendants00031331 | |
| 228 | 12/24/2019 | Native: Prism Scratchpad Math.xlsx | Defendants00031332 | Defendants00031332 | |
| 229 | 12/24/2019 | 12/24/2019 email from Eastburn to Kohlberg re: NBC | Defendants00031333 | Defendants00031333 | |
| 230 | 12/26/2019 | emails between Kaji and Shapiro discussing PrismRBS opportunity | Defendants00055434 | Defendants00055436 | |
| 231 | 12/28/2019 | Email from Eastburn to Jon Krogstad re: Akademos acquisition | Defendants00031349 | Defendants00031349 | |
| 232 | 12/28/2019 | Nebraska Book Holdings, Inc. Confidential Information Memorandum, October 31, 2019 DRAFT | Defendants00031350 | Defendants00031359 | |
| 233 | 1/2/2020 | Email from Eastburn to Kaji re: Conversation Follow-up | Defendants00055539 | Defendants00055540 | |
| 234 | 1/2/2020 | Email from Eastburn to Kaji re: Conversation Follow-up | Defendants00055541 | Defendants00055542 | |
| 235 | 1/2/2020 | Email from Shapiro to David Steinberg re: Conversation Follow-up | Defendants00091848 | Defendants00091849 | |
| 236 | 1/2/2020 | emails between Eastburn and Shapiro about potential Akademos acquisition of Prism | Defendants00091851 | | Deposition Exhibit Shapiro 6 |
| 237 | 1/3/2020 | Email from Joseph Miller to Kaji re: Diligence on Prism | Defendants00055627 | Defendants00055629 | |
| 238 | 1/3/2020 | Email from Kaji to Paindelli and Daly re: Diligence on Prism | Defendants00055644 | Defendants00055646 | |
| 239 | 1/3/2020 | Email from G. Shapiro to J. Miller re: Conversation Follow-up | Defendants00091850 | Defendants00091851 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 240 | 1/3/2020 | Prism/RBS Due Diligence Outline 1.3.2020 | Defendants00055647 | Defendants00055648 | |
| 241 | 1/6/2020 | Email from J. Daly to parchmanvaughan re: Audited Financials Attached | Defendants00055743 | Defendants00055743 | |
| 242 | 1/6/2020 | Akademos Audited Financial Statements FY 2018 | Defendants00055744 | Defendants00055765 | |
| 243 | 1/6/2020 | Akademos Audited Financial Statements FY 2019 | Defendants00055766 | Defendants00055789 | |
| 244 | 1/6/2020 | Akademos Audited Financial Statements FY 2017 | Defendants00055790 | Defendants00055813 | |
| 245 | 1/10/2020 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc., January 10, 2020 | Defendants00021314 | Defendants00021315 | |
| 246 | 1/10/2020 | Presentation: Special Meeting of the Board, 1/10/2020 (final) | Defendants00056121 | Defendants00056134 | |
| 247 | 1/29/2020 | Email from Kaji to Rudy Ruano re: Presentation for tomorrow | Defendants00057128 | Defendants00057128 | |
| 248 | 1/29/2020 | Presentation: Project Pericles, January 2020 | Defendants00057129 | Defendants00057157 | |
| 249 | 1/31/2020 | Native: Cap Table as of January 31, 2020 with waterfall v6.xlsx | Defendants00100444 | Defendants00100444 | |
| 250 | 2/1/2020 | Spreadsheet with Projections in CIP | Defendants00066390 | | |
| 251 | 2/6/2020 | Email from Kaji to Eastburn re: Prism + Akademos Financing | Defendants00016899 | Defendants00016899 | |
| 252 | 2/9/2020 | Email from Kaji to Akademos Board re: Board materials for Tuesday | Defendants00100222 | Defendants00100222 | |
| 253 | 2/9/2020 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc., January 10, 2020 | Defendants00100223 | Defendants00100224 | |
| 254 | 2/9/2020 | Presentation: Board Meeting - Addendum 2/11/2020 (final) | Defendants00100225 | Defendants00100231 | |
| 255 | 2/9/2020 | Presentation: Board Meeting 2/11/2020 (final) | Defendants00100232 | Defendants00100247 | |
| 256 | 2/9/2020 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc., December 5, 2019 | Defendants00100248 | Defendants00100249 | |
| 257 | 2/9/2020 | Minutes of a Regular Meeting of the Board of Direcots of Akademos, Inc., December 10, 2019 | Defendants00100250 | Defendants00100251 | |
| 258 | 2/9/2020 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc., October 21, 2019 | Defendants00100252 | Defendants00100257 | |
| 259 | 2/9/2020 | Potential Acquirers and Investors for: Adademos (Buyers Book Draft 2.7.20) | Defendants00100258 | Defendants00100290 | |
| 260 | 2/9/2020 | Presentation: Pericles Presentation, January 2020 | Defendants00100291 | Defendants00100320 | |
| 261 | 2/9/2020 | Pre board meeting with Raj Kenji, Feb. 9. | P022733 | P022734 | |
| 262 | 2/11/2020 | Minutes of a Regular Meeting of the Board of Directors of Akademos, Inc., February 11, 2020 | Defendants00021316 | Defendants00021318 | |
| 263 | 2/11/2020 | Presentation: Board Meeting 2/11/2020 (Executive Session) | Defendants00058510 | Defendants00058516 | |
| 264 | 2/11/2020 | Presentation: Board Meeting 2/11/2020 (final) | Defendants00058517 | Defendants00058533 | |
| 265 | 2/11/2020 | Presentation: Board Meeting 2/11/2020 (Executive Session GARY VERSION) | Defendants00058559 | Defendants00058564 | |
| 266 | 2/11/2020 | Presentation: Board Meeting - Addendum 2/11/2020 | Defendants00058587 | Defendants00058593 | |
| 267 | 2/11/2020 | Email from Kaji to Parchman asking them to join board meeting and stating Akademos "crushed" January | Defendants00120284 | | Deposition Exhibit Kaji 5 |
| 268 | 2/11/2020 | Presentation: Board Meeting 2/11/2020 | Defendants00120286 | Defendants00120301 | |
| 269 | 2/11/2020 | Presentation: Board Meeting - Addendum 2/11/2020 | Defendants00120302 | Defendants00120308 | |
| 270 | 2/11/2020 | email from Raj Kaji to Board re: reduction in Nebraska Book Company bid from $17mm to $10mm | P015580 | | Deposition Exhibit Shapiro 10 |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 271 | 2/11/2020 | Akademos Financial Summary 11.19.19.xlsx | P015581 | P015587 | |
| 272 | 2/11/2020 | Summary of Indicative Terms and Conditions for the Merger of Nebraska Book Company and Akademos, Inc. | P015588 | P015588 | |
| 273 | 2/11/2020 | Email from Jacobs to Kaji re FW: Ambassador Term Sheet | P015590 | P015590 | |
| 274 | 2/11/2020 | Native Spreadsheet: NewCo Bonus Carve Out 2019.11.05 | P015591 | P015591 | |
| 275 | 2/11/2020 | Native: Proposed Combination of Ambassador Education Solutions and Akademos, Draft for Discussion Purposes Only, November __, 2019 | P015592 | P015592 | |
| 276 | 2/12/2020 | Financial Projections | Defendants00066450 | | |
| 277 | 2/13/2020 | email from Kaji to Paindelli discussed slide deck for investors | Defendants00059403 | Defendants00059407 | Deposition Exhibit Paindelli 3, Kaji 6 |
| 278 | 2/15/2020 | Email from N. Kaji to J. Eastburn re: Fwd: Follow up items | Defendants00059594 | Defendants00059598 | |
| 279 | 2/15/2020 | Native: Prism churn updated 2.14.20.xlsx | Defendants00059601 | Defendants00059601 | |
| 280 | 2/27/2020 | Akademos Confidential Information Presentation (Approved - Financing) | Defendants00001473 | Defendants00001518 | |
| 281 | 3/1/2020 | Parchman Vaughan Akademos Confidential Information Presentation | Defendants00001428 | Defendants00001472 | Deposition Exhibit Paindelli 2, Kaji 4 |
| 282 | 3/2/2020 | Email from Paindelli to Boyster re: Questions and Answers in regards to Process – invitation to edit | Defendants00004997 | Defendants00004997 | |
| 283 | 3/2/2020 | Questions and Answers in regards to Process | Defendants00005725 | Defendants00005749 | |
| 284 | 3/3/2020 | Questions and Answers in regards to Process | Defendants00004998 | Defendants00005006 | |
| 285 | 3/3/2020 | Email from Kaji to Boyster re: Questions and Ans… | Defendants00005024 | Defendants00005024 | |
| 286 | 3/3/2020 | Questions and Answers in regards to Process (Key overarching points for process) | Defendants00005775 | Defendants00005799 | |
| 287 | 3/6/2020 | Email from Luca Paindelli to Todd Parchman re: Berenson Questions to Akademos | Defendants00017820 | Defendants00017823 | |
| 288 | 3/6/2020 | Akademos Proprietary & Confidential Financial Review for Clemson University | Defendants00061803 | Defendants00061811 | |
| 289 | 3/7/2020 | email between Todd Parchman and Luca Paindelli re: GMV vs. GAAP revenue | Defendants00017829 | Defendants00017833 | Deposition Exhibit Paindelli 7 |
| 290 | 3/10/2020 | Email from Kaji to Jacobs re: Edits to minutes | P015637 | P015639 | |
| 291 | 3/17/2020 | Minutes of a Meeting of the Board of Directors of Akademos, Inc., March 17, 2020 | Defendants00021319 | Defendants00021330 | |
| 292 | 3/17/2020 | Email from N. Kaji to J. Rowan, T. Parchman re Fwd: Carve out docs for 3/17 Meeting | Defendants00120437 | Defendants00120439 | |
| 293 | 3/17/2020 | Akademos Contact Status 3.16.20 | Defendants00120443 | Defendants00120448 | |
| 294 | 3/17/2020 | Presentation: Board Meeting - Coronavirus Update & Case Needs, March 17, 2020 | Defendants00120449 | Defendants00120454 | |
| 295 | 3/22/2020 | Presentation: Shareholder Meeting - Coronavirus Update & Cash Needs, March 23, 2020 | Defendants00062835 | Defendants00062839 | |
| 296 | 3/22/2020 | Email from B. Jacobs to R. Shuken re PO Update - capital raise | P015783 | P015784 | |
| 297 | 3/23/2020 | Email from PVC to Kaji re: CIP with Brian Jacobs as a watermark | Defendants00062875 | Defendants00062875 | |
| 298 | 3/23/2020 | Akademos Confidential Investment Presentation (Copy for Brian Jacobs) | Defendants00062876 | Defendants00062921 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 299 | 3/24/2020 | Email from Kaji to Jacobs re: Meeting regrading Company update | P015995 | P015997 | |
| 300 | 3/26/2020 | Email from Raj Kaji to John Eastburn re: Offense | Defendants00063370 | Defendants00063370 | |
| 301 | 3/27/2020 | email from Eastburn to Kohlberg about next steps for Akademos | Defendants00096793 | | Deposition Exhibit Eastburn 14 |
| 302 | 3/27/2020 | Native: Recapitalization.xlsx | Defendants00096794 | Defendants00096794 | |
| 303 | 3/28/2020 | Email from Kaji to Eastburn et al. re: Offer from eCampus | P016017 | P016018 | |
| 304 | 3/28/2020 | eCampus Initial Indication of Interest (IOI) | P016019 | P016019 | |
| 305 | 3/30/2020 | Presentation: Process Update, Monday, March 30 2020 | Defendants00002743 | Defendants00002754 | |
| 306 | 3/30/2020 | Minutes of a Specia Meeting of the Board of Directors of Akademos, Inc., March 30, 2020 | Defendants00021331 | Defendants00021332 | |
| 307 | 3/30/2020 | Email from Youstra to Eastburn re: Decks | Defendants00096238 | Defendants00096244 | |
| 308 | 3/30/2020 | Undated draft email from R. Kaji to B. Youstra re: Intro Letter – Caldwell University Final | Defendants00096245 | Defendants00096248 | |
| 309 | 3/30/2020 | 11/27/2019 Intro Letter - Caldwell University Final | Defendants00096249 | Defendants00096249 | |
| 310 | 4/2/2020 | email from Eastburn to Kohlberg and Youstra forwarding Akademos analysis and strategy memo, with memo attached | Defendants00098598 | Defendants00098604 | Deposition Exhibit Youstra 10, Eastburn 15 |
| 311 | 4/8/2020 | Email from Kaji to Eastburn et al. re: Updates | P016066 | P016066 | |
| 312 | 4/8/2020 | Term Sheet for Potential Investment in Akademos, Inc., Convertible Subordinated Promissory Note | P016067 | P016073 | |
| 313 | 4/8/2020 | eCampus Revised IOI | P016074 | P016074 | |
| 314 | 4/9/2020 | email from Raj Kaji to Michael Koby re: KV strategy | Defendants00108834 | Defendants00108835 | Deposition Exhibit Kaji 8 |
| 315 | 4/13/2020 | email from Raj Kaji to Parchan Vaughan stating KV will not extend maturity date | Defendants00100596 | Defendants00100597 | Deposition Exhibit Eastburn 16 |
| 316 | 4/13/2020 | ECampus Revised Indication of Interest letter (IOI) | Defendants00100598 | Defendants00100598 | |
| 317 | 4/14/2020 | Email from Youstra to Kohlberg re: Cash flow projection | Defendants00115355 | Defendants00115355 | |
| 318 | 4/14/2020 | Native: 13 week cash needs through July 31 ao 4.10.2020.xlsx | Defendants00115356 | Defendants00115356 | |
| 319 | 4/15/2020 | Minutes of a Special Meeting of the Board of Directors of Akademos, Inc., April 15, 2020 | Defendants00021344 | Defendants00021346 | |
| 320 | 4/15/2020 | email from Eastburn to Kaji asking why anyone would put in capital with the preference stack as it is | Defendants00100622 | | Deposition Exhibit Eastburn 17, Kaji 9 |
| 321 | 4/15/2020 | Akademos board meeting 4/15 | P022735 | P022735 | |
| 322 | 4/23/2020 | Presentation: April 23rd Board Meeting | Defendants00001689 | Defendants00001715 | |
| 323 | 4/23/2020 | Minutes of a Regular Meeting of the Board of Directors of Adademos, Inc., April 23, 2020 | Defendants00021333 | Defendants00021337 | |
| 324 | 4/23/2020 | Akademos Board meeting 4/23 | P022736 | P022736 | |
| 325 | 4/27/2020 | Email from Burck Smith to R. Kaji re: Dual transformation | Defendants00093372 | Defendants00093373 | |
| 326 | 4/30/2020 | Project Pereus AP & AR Aging as of 04.30.20 | AW Production No Bates | | |
| 327 | 4/30/2020 | Subordinated Secured Convertible Promissory Note | Defendants00001716 | Defendants00001738 | |
| 328 | 4/30/2020 | BAHI April 30, 2020 Warrant | Defendants00024791 | Defendants00024800 | |
| 329 | 4/30/2020 | Akademos, Inc. Warrant for the Purchase of Shares of Series B Preferred Stock | Defendants00065480 | Defendants00065489 | |
| 330 | 5/8/2020 | Email from Daly to Jacobs, et al. re: Akademos Rights Offering | P016226 | P016227 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 331 | 5/22/2020 | Email from Jacobs to Velaise re: Akademos Rights Offering | P016272 | P016276 | |
| 332 | 5/30/2020 | Email from J. Rowan to N. Kaji re: Perseus - List of Investors | Defendants00067022 | Defendants00067022 | |
| 333 | 5/30/2020 | Perseus - List of Investors | Defendants00067023 | Defendants00067025 | |
| 334 | 6/3/2020 | Email from R. Kaji to Senior Team re: CONFIDENTIAL - PLEASE REVIEW PRIOR TO TOMORROW'S 1PM MEETING | Defendants00067155 | Defendants00067155 | |
| 335 | 6/3/2020 | Presentation: Akademos Budget and Strategy Internal Discussion | Defendants00067156 | Defendants00067164 | |
| 336 | 6/3/2020 | Email from L. Paindelli to J. Brown re: Perseus - List of Investors | Defendants00067212 | Defendants00067213 | |
| 337 | 6/3/2020 | Presentation: Management Presentation, Wednesday, June 3, 2020 | Defendants00067214 | Defendants00067219 | |
| 338 | 6/12/2020 | Email from Todd Parchman to Luca Paindelli re: Perseus – List of Investors.pdf | Defendants00018804 | Defendants00018806 | |
| 339 | 6/16/2020 | Email from R. Kaji to G. Shapiro re: Board documents | Defendants00114792 | Defendants00114792 | |
| 340 | 6/16/2020 | 04.15.2020 Akademos board minutes (revised) | Defendants00114805 | Defendants00114807 | |
| 341 | 6/16/2020 | 04.23.2020 Akademos board minutes | Defendants00114808 | Defendants00114812 | |
| 342 | 6/16/2020 | Presentation: Board Discussion (FINAL - For Gary) (June 18, 2020) | Defendants00114813 | Defendants00114846 | |
| 343 | 6/18/2020 | Presentation: Board Discussion, Thursday, June 18, 2020 (final) | Defendants00001795 | Defendants00001832 | |
| 344 | 6/18/2020 | Minutes of a Regular Meeting of the Board of Directors of Akaemos, Inc., June 18, 2020 | Defendants00097708 | Defendants00097710 | |
| 345 | 6/18/2020 | Akademos - June 18 2020 Board Minutes (Final) | Defendants00097846 | Defendants00097848 | |
| 346 | 6/19/2020 | email from Eastburn to Angie Ferrif re: tax consequences of Akademos deal | Defendants00031547 | Defendants00031548 | Deposition Exhibit Eastburn 18 |
| 347 | 6/22/2020 | Akademos - June 22 2020 Board Minutes (Final) | Defendants00021253 | Defendants00021254 | |
| 348 | 6/22/2020 | Email from R. Kaji to B. Jacobs et al. re: Minor amendment to 3.17.20 minutes | Defendants00114848 | Defendants00114848 | |
| 349 | 6/22/2020 | 03.17.2020 Akademos Board Minutes (revised) | Defendants00114849 | Defendants00114860 | |
| 350 | 6/24/2020 | Ames Watson Akademos Memo | AW Production No Bates | | |
| 351 | 6/24/2020 | 6_24_2020 email from M Levit to L. Berger re: Project Pereus (Akademos) Update | AW Production No Bates | | |
| 352 | 6/24/2020 | Ames Watson Investment Team Memo re Akademos Memo dated June 24, 2020 | AW Production No Bates | | |
| 353 | 6/27/2020 | email from Kaji to the Board re: record sales | Defendants00093375 | | Deposition Exhibit Shapiro 8, Eastburn 19, Smith 6, Kaji 12 |
| 354 | 6/30/2020 | Project Pereus Updated Cash Schedule | AW Production No Bates | | |
| 355 | 6/30/2020 | Project Pereus Updated Financials | AW Production No Bates | | |
| 356 | 6/30/2020 | Akademos Audited Financial Statement | Defendants00024644 | Defendants00024667 | |
| 357 | 6/30/2020 | Akademos-OPSU agreement | Defendants00025574 | Defendants00025578 | |
| 358 | 6/30/2020 | Akademos Tax Return | Defendants00126510 | Defendants00126686 | |
| 359 | 7/1/2020 | Ames Watson notes from 07-01-2020 call with Joe Daly and Luca Paindelli | AW Production No Bates | Deposition Exhibit Daly 2, Paindelli 4, Kaji 10 | |
| 360 | 7/1/2020 | 7_1_2020 email from Misha Levit to Lawrence Berger re: Akademos Operating Expense Breakdown | AW Production No Bates | | |
| 361 | 7/2/2020 | Financial Analysis_Pereus_V3.xlsx | AW Production No Bates | | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 362 | 7/7/2020 | 7_7_2020 email from Misha Levit to Lawrence Berger re: Akademos CEO and Recent News/Contract | AW Production No Bates | | |
| 363 | 7/8/2020 | Ames Watson Akademos Updated Financial Analysis Spreadsheet 7.8.20 | AW Production No Bates | | |
| 364 | 7/8/2020 | email between Gary Shapiro and Raj Kaji re: potential merger with Akademos | Defendants00092915 | | Deposition Exhibit Shapiro 7 |
| 365 | 7/9/2020 | Email from John Eastburn to James Kohlberg re: Akademos Recap offer | Defendants00106098 | Defendants00106098 | |
| 366 | 7/9/2020 | Akademos LOI 7.9.2020 JE.docx | Defendants00106099 | Defendants00106107 | |
| 367 | 7/10/2020 | 7_10_2020 email from Misha Levit to Will Carr re: Project Pereus Financial Analysis | AW Production No Bates | | |
| 368 | 7/10/2020 | Ames Watson Investment Team Memo re: Akademos Financial Analysis dated July 10, 2020 | AW Production No Bates | | |
| 369 | 7/13/2020 | Ames Watson Akademos Financial Analysis 7.13.20 | AW Production No Bates | | |
| 370 | 7/13/2020 | Ames Watson Investment Team Memo re: Akademos Financial Analysis dated July 13, 2020 | AW Production No Bates | | |
| 371 | 7/13/2020 | Email from James Rowan to Kaji, Paindelli, and Daly re: Akademos Contact Matrix 7.13.20.pdf | Defendants00019109 | Defendants00019109 | |
| 372 | 7/13/2020 | Akademos Contact Matrix 7.13.20 | Defendants00019110 | Defendants00019111 | |
| 373 | 7/13/2020 | Bay Area holdings, Inc. Term Sheet | Defendants00106109 | Defendants00106116 | |
| 374 | 7/14/2020 | Email from Misha Levit to Lawrence Berger re: Project Perseus (Akademos) Financial Analysis | AW Production No Bates | | |
| 375 | 7/15/2020 | Akademos - July 15 2020 Board Minutes (final) | Defendants00097842 | Defendants00097845 | |
| 376 | 7/16/2020 | Ames Watson – July 16, 2020 email from Lawrence Berger to James Rowan | AW Production No Bates | | |
| 377 | 7/16/2020 | Email from Smith to Kaji re: items to negotiate with KV | Defendants00124196 | Defendants00124196 | |
| 378 | 7/16/2020 | email from Gary Shapiro to Raj Kaji about allowing flexibility on deadline to find a competing bid to KV offer | Defendants00124197 | | Deposition Exhibit Shapiro 9, Smith 7 |
| 379 | 7/17/2020 | Ames Watson INITIAL LOI | AW Production No Bates | | |
| 380 | 7/17/2020 | Akademos, Inc_AW IOI_07-17-2020_V4.docx | AW Production No Bates | | |
| 381 | 7/20/2020 | Akademos-Northeast Iowa Community College agreement | Defendants0006503 | Defendants0006507 | |
| 382 | 7/21/2020 | 7/21/2020 email chain from William Carr to James Rowan re: Ames Watson_Akademos LOI | AW Production No Bates | | |
| 383 | 7/21/2020 | Akademos, Inc_AW LOI_07-21-2020_Final.docx | AW Production No Bates | | |
| 384 | 7/21/2020 | Email from Kaji to Akademos Board re: Ames Watson_Akademos LOI | P017078 | P017078 | |
| 385 | 7/21/2020 | Akademos, Inc.-Ames Watson Letter of Intent (LOI) | P017079 | P017083 | |
| 386 | 7/23/2020 | Email from Kaji to Akademos Board (less KV) re: Akademos LOI 7.22.2020 (AKA Edits) (002) | Defendants00124199 | Defendants00124199 | |
| 387 | 7/23/2020 | Akademos LOI 7.22.2020 (AKA Edits) (002) | Defendants00124200 | Defendants00124208 | |
| 388 | 7/24/2020 | Akademos-Nueta Hidatsa agreement | Defendants0069185 | Defendants0069189 | Deposition Exhibit Kaji 15 |
| 389 | 7/27/2020 | email exchange with Preferred Return re: 409A Valuation and liquidity event | Defendants00019201 | Defendants00019204 | |
| 390 | 7/29/2020 | Bay Area Holdings, Inc. Term Sheet | Defendants00106156 | Defendants00106163 | |
| 391 | 7/30/2020 | Ames Watson Project Perseus Financial Analysis 7.30.2020 | AW Production No Bates | | |
| 392 | 7/31/2020 | Email from Kaji to Shapiro re: Board documents | Defendants00114879 | Defendants00114879 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 393 | 7/31/2020 | Presentation: August 3, 2020 Special Board Meeting (Update - Shapiro Version) | Defendants00114880 | Defendants00114885 | |
| 394 | 7/31/2020 | BAH Signature | Defendants00114886 | Defendants00114886 | |
| 395 | 7/31/2020 | Akademos LOI FINAL 7.29.2020 | Defendants00114887 | Defendants00114894 | |
| 396 | 7/31/2020 | Akademos Contact Matrix 7.31.20 | Defendants00114895 | Defendants00114896 | |
| 397 | 7/31/2020 | Email from R. Kaji to board re: Board meeting - Monday | Defendants00117627 | Defendants00117628 | |
| 398 | 7/31/2020 | Akademos Contact Matrix 7.31.20 | Defendants00117629 | Defendants00117630 | |
| 399 | 7/31/2020 | Presentation: August 3, 2020 Special Board Meeting | Defendants00117631 | Defendants00117636 | |
| 400 | 7/31/2020 | Akademos LOI FINAL 7.29.2020 | Defendants00117637 | Defendants00117644 | |
| 401 | 7/31/2020 | BAH Signature | Defendants00117645 | Defendants00117645 | |
| 402 | 8/3/2020 | Akademos - August 3, 2020 Board Minutes (Final) | Defendants00097838 | Defendants00097841 | |
| 403 | 8/4/2020 | email from Kaji to Board re: unusual situation of majority owner buying business | Defendants00109148 | Defendants00109149 | Deposition Exhibit Kaji 11 |
| 404 | 8/4/2020 | Email from Kaji to Akademos Board re: Board meeting - Monday | Defendants00116598 | Defendants00116599 | |
| 405 | 8/5/2020 | Email from N. Kaji to J. Rowan re: Screenshot (Aug 5, 2020 4:38:01 PM) | Defendants00069211 | Defendants00069211 | |
| 406 | 8/5/2020 | Screenshot_20200805-163801 (Gren Fenton text) | Defendants00069212 | Defendants00069212 | |
| 407 | 8/6/2020 | Email from James Rowan to Kaji re: Akademos (Project Perseus) | Defendants00069233 | Defendants00069235 | |
| 408 | 8/6/2020 | Native: Project_12032019.xlsx | Defendants00069236 | Defendants00069236 | |
| 409 | 8/7/2020 | Email from James Rowan to Kaji re: Akademos (Project Perseus) | Defendants00069258 | Defendants00069262 | |
| 410 | 8/10/2020 | Ames Watson -8/10/2020 Email Chain from James Rowan to Lawrence Berger, copying William Carr, re: akademos | AW Production No Bates | | |
| 411 | 8/10/2020 | Email from Edward Roberts to Brian Jacobs re: Akademos call | P017207 | P017207 | |
| 412 | 8/28/2020 | Akademos-Cardinal Stritch agreement | Defendants00025672 | Defendants00025676 | Deposition Exhibit Kaji 13 |
| 413 | 8/31/2020 | Akademos' internal financial statements for the two-month periods ended August 31, 2019 and 2020 | P017571 | P017585 | |
| 414 | 9/1/2020 | NVCA Amended and Restated Certificate of Incorporation | No Bates | | |
| 415 | 9/4/2020 | Minutes of a Meeting of the Board of Directors of Akademos, Inc., September 4, 2020 | Defendants00097001 | Defendants00097002 | |
| 416 | 9/8/2020 | Annex C – Common Stock Proposal, dated September 8, 2020 | Defendants00001881 | Defendants00001882 | |
| 417 | 9/9/2020 | Email from Kaji to Paindelli re: Touch Base | Defendants00069673 | Defendants00069675 | |
| 418 | 9/9/2020 | Native: Company B provided term sheet 2019.11.21 with added Company A thoughts 2019.12.02.xlsx | Defendants00069676 | Defendants00069676 | |
| 419 | 9/10/2020 | Email from Joe Daly to Akademos common stockholders | P017267 | P017269 | |
| 420 | 9/10/2020 | Email from Kutnick to Velaise and Jacobs re: Bay Area Holdings offer to Holders of Akademos Inc. Common Stock | P017326 | P017332 | |
| 421 | 9/10/2020 | Email from Jacobs to Kutnick re: thread | P017337 | P017338 | |
| 422 | 9/10/2020 | January 19 2017 Brian Jones Memo on Akademos | P017339 | P017341 | |
| 423 | 9/11/2020 | Email from Bill Youstra to Jack Youstra re: Bay Area Holdings offer to Holders of Akademos Inc. Common Stock | Defendants00096352 | Defendants00096361 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 424 | 9/11/2020 | Email from Velaise to others re: Bay Area Holdings offer to Holders of Akademos Inc. Common Stock | P017345 | P017349 | |
| 425 | 9/16/2020 | Preferred Returns 409A Valuation Discussion Draft – Not Final – Created 2020-09-16 | Defendants00069953 | Defendants00070027 | |
| 426 | 9/16/2020 | Email from Kutnick to Dennis and Roberts re: Bay Area Holdings offer to Holders of Akademos Inc. Common Stock | P017385 | P017389 | |
| 427 | 9/16/2020 | Email from Brian Jacobs to John Eastburn re: Fact confirmation | P017430 | P017431 | |
| 428 | 9/17/2020 | email from Raj Kaji to Joe Daly re: 409A valuation | Defendants00020438 | Defendants00020439 | Deposition Exhibit Daly 3, Kaji 21 |
| 429 | 9/17/2020 | Email from Youstra to Eastburn re: Alan Jacobs | Defendants00096413 | Defendants00096413 | |
| 430 | 9/22/2020 | email from Jonathan Alderman to Joe Daly and Mary Lavelle re: 409A valuation | Defendants00020459 | Defendants00020471 | Deposition Exhibit Daly 4 |
| 431 | 9/22/2020 | Preferred Returns 409A Valuation - 409A June 2020 | Defendants00020472 | Defendants00020547 | |
| 432 | 9/22/2020 | Native: WarrantValuation_Akedmos_April2020_SeriesBWarrants (CLIENT).xlsx | Defendants00020548 | Defendants00020548 | |
| 433 | 9/23/2020 | Email from Kaji to Eastburn, et al. re: Board meeting on the 29th - Minutes and PVC documents | P017591 | P017591 | |
| 434 | 9/23/2020 | Minutes of the Meeting of the Board of Directors of Akademos, Inc., August 3, 2020 | P017592 | P017595 | |
| 435 | 9/23/2020 | Minutes of the Meeting of the Board of Directors of Akademos, Inc., July 15, 2020 | P017596 | P017599 | |
| 436 | 9/23/2020 | Minutes of the Meeting of the Board of Directors of Akademos, Inc., June 18, 2020 | P017600 | P017602 | |
| 437 | 9/23/2020 | Minutes of the Meeting of the Board of Directors of Akademos, Inc., June 22, 2020 | P017603 | P017604 | |
| 438 | 9/23/2020 | Minutes of the Meeting of the Board of Directors of Akademos, Inc.,September 4, 2020 | P017605 | P017606 | |
| 439 | 9/23/2020 | Presentation: Akademos Process Overview, September 29, 2020 | P017607 | P017615 | |
| 440 | 9/29/2020 | Presentation: Process Overview, September 29, 2020 (Akademos Summary of PVC Process Final) | Defendants00070201 | Defendants00070209 | |
| 441 | 9/29/2020 | Spiro Harrison Letter | P022082 | P022093 | |
| 442 | 10/2/2020 | Email from Daly to Paindelli re: FW: Merger Closing Documents | Defendants00110327 | Defendants00110329 | |
| 443 | 10/2/2020 | 00 Index of Closing Documents | Defendants00110330 | Defendants00110330 | |
| 444 | 10/2/2020 | 01 Merger Agreement | Defendants00110331 | Defendants00110422 | |
| 445 | 10/2/2020 | 02 Certificate of Merger | Defendants00110423 | Defendants00110427 | |
| 446 | 10/2/2020 | 03 Akademos Compliance Certificate | Defendants00110428 | Defendants00110429 | |
| 447 | 10/2/2020 | 04 Akademos Secretary's Certificate | Defendants00110430 | Defendants00110658 | |
| 448 | 10/2/2020 | 05 Akademos Merger Consideration Certificate | Defendants00110659 | Defendants00110661 | |
| 449 | 10/2/2020 | 06 BAHI Compliance Certificate | Defendants00110662 | Defendants00110662 | |
| 450 | 10/2/2020 | 07 BAHI Waiver | Defendants00110663 | Defendants00110664 | |
| 451 | 10/2/2020 | 08 BAHI Warrant Exercises | Defendants00110665 | Defendants00110666 | |
| 452 | 10/2/2020 | 09 KV Warrant Exercises | Defendants00110667 | Defendants00110668 | |
| 453 | 10/2/2020 | 10 Akademos VLL6 Warrant | Defendants00110669 | Defendants00110681 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 454 | 10/2/2020 | 11 Akademos VLL7 Warrant | Defendants00110682 | Defendants00110694 | |
| 455 | 10/2/2020 | 12 Akademos VLL8 Warrant | Defendants00110695 | Defendants00110707 | |
| 456 | 10/2/2020 | 13 AvidBank Consent | Defendants00110708 | Defendants00110751 | |
| 457 | 10/2/2020 | 14 Surviving Company Stockholder Consent (Directors and Bylaws) | Defendants00110752 | Defendants00110768 | |
| 458 | 10/2/2020 | 15 Survivor Company Board Consent (By Laws and Equity Incentive Plan) | Defendants00110769 | Defendants00110830 | |
| 459 | 10/2/2020 | 16 Surviving Company Stockholder Consent (Equity Incentive Plan) | Defendants00110831 | Defendants00110832 | |
| 460 | 10/12/2020 | Email from L. Paindelli to N. Kaji re: Final model | Defendants00070782 | Defendants00070784 | |
| 461 | 10/12/2020 | Akademos Org Chart, Last Updated 08-14-2020 | Defendants00070795 | Defendants00070794 | |
| 462 | 10/12/2020 | Native: Model 10112020.xlsx | Defendants00070795 | Defendants00070795 | |
| 463 | 10/20/2020 | email from Eastburn to Youstra re: Raj ignored Board directive to cut costs | Defendants00031692 | | Deposition Exhibit Youstra 14, Eastburn 20, Kaji 20 |
| 464 | 10/20/2020 | Presentation: KV Disussion _ LP Slides | Defendants00031693 | Defendants00031696 | |
| 465 | 10/20/2020 | Presentation: KV Disussion 10/13/20 | Defendants00031697 | Defendants00031727 | |
| 466 | 10/20/2020 | Native: Model 10112020.xlsx | Defendants00031728 | Defendants00031728 | |
| 467 | 10/20/2020 | Native: Option distribution v03.xlsx | Defendants00031729 | Defendants00031729 | |
| 468 | 10/22/2020 | email exchange between Mary Lavelle and Joe Surrette re: 409A valuation | Defendants00020997 | Defendants00021000 | Deposition Exhibit Daly 5, Eastburn 22, Kaji 22 |
| 469 | 10/22/2020 | Email from M. Lavelle to J. Surette and J. Adlerman (Preferred Returns) re: New 409A - docs for 5.2019 sub debt | Defendants00021008 | Defendants00021011 | |
| 470 | 10/22/2020 | VLL Subordination Agreement | Defendants00021012 | Defendants00021018 | |
| 471 | 10/22/2020 | First Amendment to Subordinated Convertible Promissory Note (3.26.18 Note Amendment - Akademos - signed) | Defendants00021019 | Defendants00021022 | |
| 472 | 10/22/2020 | Subordinated Convertible Promissory Note (Akademos - BAHI $2,250,000 May 2019 Note) | Defendants00021023 | Defendants00021032 | |
| 473 | 10/22/2020 | Akademos - BAHI Warrant (May 2019) | Defendants00021033 | Defendants00021042 | |
| 474 | 10/22/2020 | All executed combined | Defendants00021043 | Defendants00021080 | |
| 475 | 10/22/2020 | AVB-BAH Subordination Agreement | Defendants00021081 | Defendants00021085 | |
| 476 | 10/26/2020 | Presentation: Board Meeting 10/26/2020 (final) | Defendants00001917 | Defendants00001964 | |
| 477 | 10/26/2020 | 10/26/20 Email from Preferred Returns to Daly re: New 409A – docs for 5.2019 sub debt | Defendants00021149 | Defendants00021155 | |
| 478 | 10/26/2020 | Native: Balance Sheet working model.xlsx | Defendants00021156 | Defendants00021156 | |
| 479 | 10/28/2020 | Email from Youstra to Stephen Cain re: Checking again on that board of directors role for akademos | Defendants00096416 | Defendants00096416 | |
| 480 | 11/10/2020 | Northeast Iowa Community College Press Release | | | |
| 481 | 11/11/2020 | Native: Spreadsheet model 11/11/2020 (Kaji 24) | AW Production No Bates | | |
| 482 | 11/12/2020 | Akademos-OPSU press release | | | |
| 483 | 11/13/2020 | Email from Paindelli to Kaji re: Core-EEA | Defendants00072250 | Defendants00072250 | |
| 484 | 11/13/2020 | Native: Model 11112020.xlsx | Defendants00072252 | Defendants00072252 | |
| 485 | 11/13/2020 | Native: Core-EEA Allocations 11132020.xlsx | Defendants00072251 | Defendants00072251 | |
| 486 | 11/17/2020 | Akademos-Nueta Hidatsa press release | | | Deposition Exhibit Kaji 16 |
| 487 | 11/21/2020 | Presentation: Board Meeting Follow Up | Defendants00001985 | Defendants00001991 | |
| 488 | 12/3/2020 | Akademos-Cardinal Stritch press release | | | Deposition Exhibit Kaji 14 |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 489 | 12/14/2020 | Native: 12.14.20 Merger Securityholders Distributions w Actuals.xlsx | Defendants00031732 | Defendants00031732 | |
| 490 | 12/15/2020 | Certificate of Correction of Akademos, Inc. | Defendants00116104 | Defendants00116105 | |
| 491 | 12/17/2020 | Spiro Harrison Letter | Defendants00119686 | Defendants00119688 | |
| 492 | 12/18/2020 | Email from Eastburn to Kohlberg re: BAHI's Acquisition of Akademos | Defendants00113440 | Defendants00113442 | |
| 493 | 12/22/2020 | Minutes of a Meeting of the Board of Directors of Akademos, Inc., December 22, 2020 | Defendants00097961 | Defendants00097965 | |
| 494 | 12/22/2020 | Email from Daly to Kaji re: Brian's indemnification agreement | Defendants00111669 | Defendants00111670 | |
| 495 | 12/22/2020 | Brian Jacobs Indemnification Agreement | Defendants00111671 | Defendants00111684 | |
| 496 | 12/22/2020 | Plan and Agreement of Merger | Defendants00116311 | Defendants00116404 | |
| 497 | 12/22/2020 | Akademos Plan and Agreement of Merger | P022440 | P022533 | |
| 498 | 12/23/2020 | Native: Cap Table as of December 23, 2020 with waterfall at Break even.xlsx | Defendants00076670 | Defendants00076670 | |
| 499 | 12/23/2020 | Native: Cap Table as of December 23, 2020 with waterfall at $12.5M.xlsx | Defendants00126688 | Defendants00126688 | |
| 500 | 12/23/2020 | Akademos Cap Table | | | |
| 501 | 12/30/2020 | Annex F - September and October 2020 Financials; revised September 2020 Balance Sheet | Defendants00002056 | Defendants00002064 | |
| 502 | 12/31/2020 | Akademos Information Statement | P022096 | P022144 | |
| 503 | 12/31/2020 | Email from Daly to Jacobs et al. re: Fwd Important Notice Regarding Akademos, Inc. | P022390 | P022390 | |
| 504 | 12/31/2020 | Akademos Information Statement, December 31, 2020 | P022391 | P022439 | |
| 505 | 12/31/2020 | Annex B - Certificate of Correction | P022534 | P022535 | |
| 506 | 12/31/2020 | Annex C - Common Stock Proposal, September 8, 2020 | P022536 | P022537 | |
| 507 | 12/31/2020 | Annex D - Projected Quarterly Statement of Operations (Financial Projections) for Fiscal Year Ended June 30, 2020 | P022538 | P022538 | |
| 508 | 12/31/2020 | Native: Annex E - Assurance Letter, December 14, 2020 | P022539 | P022539 | |
| 509 | 12/31/2020 | Annex F - September and October 2020 Financials; revised September 2020 Balance Sheet | P022540 | P022548 | |
| 510 | 12/31/2020 | Annex G - October Projections for Fiscal Year 2021.pdf | P022549 | P022549 | |
| 511 | 12/31/2020 | Annex H - Letter from the Common Holder | P022550 | P022561 | |
| 512 | 12/31/2020 | Annex I -FY 2021 Budgeted Quarterly Profit & Loss | P022562 | P022562 | |
| 513 | 12/31/2020 | Annex K - June 2019 Audited Financials, June 2020 Unaudited Financials, August 2020 YTD Unaudited Financials | P022563 | P022596 | |
| 514 | 12/31/2020 | Written Consent of the Stockholders of Akademos Inc. | P022597 | P022698 | |
| 515 | 1/8/2021 | Appraisal Demand of Plaintiffs | Defendants00021761 | Defendants00021762 | |
| 516 | 1/8/2021 | Email from R. Kaji to J. Eastburn re FYI | Defendants00073218 | Defendants00073218 | |
| 517 | 1/8/2021 | Letter to G. Rooney re appraisal demand | Defendants00103214 | Defendants00103215 | |
| 518 | 2/12/2021 | Email from J. Wolfe to L. Paindelli re: Closing binder for merger redo | Defendants00112311 | Defendants00112311 | |
| 519 | 2/12/2021 | 00 Index of Closing Documents | Defendants00112312 | Defendants00112312 | |
| 520 | 2/12/2021 | 00 Index of Closing Documents | Defendants00112313 | Defendants00112313 | |
| 521 | 2/12/2021 | 01 BAHI Assurance Letter | Defendants00112314 | Defendants00112314 | |
| 522 | 2/12/2021 | 02 Akademos Board Consent (Certificate of Correction) | Defendants00112315 | Defendants00112319 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 523 | 2/12/2021 | 03 Certificate of Correction | Defendants00112320 | Defendants00112321 | |
| 524 | 2/12/2021 | 04 Plan and Agreement of Merger | Defendants00112322 | Defendants00112415 | |
| 525 | 2/12/2021 | 05 Certificate of Merger | Defendants00112416 | Defendants00112420 | |
| 526 | 2/12/2021 | 06 Akademos Compliance Certificate | Defendants00112421 | Defendants00112422 | |
| 527 | 2/12/2021 | 07 Akademos Secretary's Certificate | Defendants00112423 | Defendants00112658 | |
| 528 | 2/12/2021 | 08 Akademos Merger Consideration Spreadsheet Certificate | Defendants00112659 | Defendants00112661 | |
| 529 | 2/12/2021 | 09 BAHI and KV Warrant Exercise Notices | Defendants00112662 | Defendants00112663 | |
| 530 | 2/12/2021 | 10 Purchaser Compliance Certificate | Defendants00112664 | Defendants00112664 | |
| 531 | 2/12/2021 | 11 KV BAHI Merger Sub Organizational Documents | Defendants00112665 | Defendants00112770 | |
| 532 | 2/12/2021 | 12 KV BAHI Merger Sub Board Consent | Defendants00112771 | Defendants00112867 | |
| 533 | 2/12/2021 | 13 KV BAHI Merger Sub Stockholder Consent | Defendants00112868 | Defendants00112964 | |
| 534 | 2/12/2021 | 14 VLL6 Warrant | Defendants00112965 | Defendants00112978 | |
| 535 | 2/12/2021 | 15 VLL7 Warrant | Defendants00112979 | Defendants00112992 | |
| 536 | 2/12/2021 | 16 VLL8 Warrant | Defendants00112993 | Defendants00113006 | |
| 537 | 2/12/2021 | 17 AvidBank Consent | Defendants00113007 | Defendants00113104 | |
| 538 | 2/12/2021 | 18 Surviving Company Stockholder Consent (Directors and Bylaws) | Defendants00113105 | Defendants00113121 | |
| 539 | 2/12/2021 | 19 Surviving Company Board Consent (Bylaws and Equity Incentive Plan) | Defendants00113122 | Defendants00113183 | |
| 540 | 2/12/2021 | 20 Surviving Company Stockholder Consent (Equity Incentive Plan) | Defendants00113184 | Defendants00113185 | |
| 541 | 2/19/2021 | Akademos 409A Valuation, prepared by Preferred Return, execution copy created on February 19, 2021 | Defendants00002541 | Defendants00002608 | Deposition Exhibit Kaji 19 |
| 542 | 2/23/2021 | Email from Paindelli to Senior Team re: Summary preliminary forecast | Defendants00007303 | Defendants00007304 | |
| 543 | 3/1/2021 | Preferred Return 409A Valuation as of December 31, 2020 | Defendants00082465 | Defendants00082532 | |
| 544 | 1/1/2022 | Presentation: Company Overview, Winter 2022 (Akademos - Fireside Chat Deck (GAAP P&L)) | Defendants00125061 | Defendants00125119 | |
| 545 | 2/23/2022 | Common Stock Valuation for Akademos, Inc. as of December 31, 2021 (carta _watermarked) | Defendants00082533 | Defendants00082604 | |
| 546 | 4/5/2022 | April 5, 2022 Hearing Transcript | No Bates | | |
| 547 | 5/5/2022 | Invictus Proposal | Defendants00003068 | Defendants00003073 | |
| 548 | 8/8/2022 | Email re: Board membership, information and timing for board meeting for considertaion of 're-do' | Defendants00104111 | Defendants00104111 | |
| 549 | 8/8/2022 | Minutes of Meeting of the Board of Directors of Akademos, Inc., September 29, 2020 | Defendants00104112 | Defendants00104115 | |
| 550 | 8/8/2022 | Native: Core-EEA Allocations 11132020.xlsx | Defendants00104116 | Defendants00104116 | |
| 551 | 8/8/2022 | Edge Equitable Access, Description, Competitive Analysis and Proposed Extensions (Background Document) | Defendants00104117 | Defendants00104128 | |
| 552 | 8/8/2022 | Native: Model 11112020.xlsx | Defendants00104129 | Defendants00104129 | |
| 553 | 8/8/2022 | Presentation: Board Meeting 10/26/20 (Final With Updated Q1 Results) | Defendants00104130 | Defendants00104177 | |
| 554 | 8/8/2022 | Presentation: Board Meeting Follow Up | Defendants00104178 | Defendants00104184 | |
| 555 | 9/14/2022 | Email from Kutnick to Kutnick re Akademos stock sale to Ginny | P0022737 | P0022737 | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 556 | 9/14/2022 | Akademos letter, December 12, 2020 (Kutnick to Ginny offering to sell interest in the company) | P0022738 | P0022738 | |
| 557 | 1/13/2023 | Presentation: Board Meeting Update, 01/13/2023 (Tyton Partners) | Defendants00125054 | Defendants00125060 | |
| 558 | 2/14/2023 | RedShelf Akademos - Non-Binding Letter of Intent | Defendants00125268 | Defendants00125273 | |
| 559 | 2/15/2023 | Follett offer of $18.5 million | Defendants00125262 | Defendants00125267 | Deposition Exhibit Kaji 25 |
| 560 | 2/16/2023 | Presentation: Board Update, 02/16/2023 (tyton Partners, Project Maritime) | Defendants00125349 | Defendants00125351 | |
| 561 | 2/20/2023 | VitalSource letter of intent | Defendants00125326 | Defendants00125341 | |
| 562 | 2/20/2023 | Follett offer of $30 million | Defendants00125342 | Defendants00125348 | Deposition Exhibit Kaji 26 |
| 563 | 3/9/2023 | Vital Source Merger Agreement | Defendants00125771 | Defendants00125873 | |
| 564 | 6/27/2023 | Email from Fuchs to Velaise re: offering my shares at a discount | P0022744 | P0022748 | |
| 565 | | Akademos CEO Overview & Company News | AW Production No Bates | | |
| 566 | | Native: Akademos Operating Expense Breakdown.xlsx | AW Production No Bates | | |
| 567 | | Ames Watson Investment Team Memo re: Akademos Memo | AW Production No Bates | | |
| 568 | 6/30/2023 | Expert Report of David G. Clarke, ASA | | | |
| 569 | 6/30/2023 | Expert Report of Jesse Ultz, CFA, ASA | | | |
| 570 | 7/28/2023 | Rebuttal Report prepared by David G. Clarke, ASA regarding the Report Issued June 30, 2023 by Jesse A. Ultz, CFA, ASA | | | |
| 571 | 7/28/2023 | Rebuttal Expert Report of Jesse Ultz, CFA, ASA | | | |
| 572 | 6/24/2022 | Defendant Bay Area Holdings, Inc.'s Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | Deposition Exhibit Eastburn 2 |
| 573 | 6/24/2022 | Defendant Bill Youstra's Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | |
| 574 | 6/24/2022 | Defendant Burck Smith's Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | |
| 575 | 6/24/2022 | Defendant Gary Shapiro's Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | |
| 576 | 6/24/2022 | Defendant James Kohlberg's Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | |
| 577 | 6/24/2022 | Defendant John Eastburn's Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | |
| 578 | 6/24/2022 | Defendant Kohlberg Ventures, LLC's Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | |
| 579 | 6/24/2022 | Defendant Raj Kaji's Responses and Objections to Plaintiffs' First Requests for Production of Documents | | | |
| 580 | 6/24/2022 | Responses of Defendant Bay Area Holdings, Inc. to Plaintiffs' Interrogatories | | | |
| 581 | 6/24/2022 | Responses of Defendant Bill Youstra to Plaintiffs' Interrogatories | | | |
| 582 | 6/24/2022 | Responses of Defendant Burck Smith to Plaintiffs' Interrogatories | | | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 583 | 6/24/2022 | Responses of Defendant Gary Shapiro to Plaintiffs' Interrogatories | | | |
| 584 | 6/24/2022 | Responses of Defendant James Kohlberg to Plaintiffs' Interrogatories | | | |
| 585 | 6/24/2022 | Responses of Defendant John Eastburn to Plaintiffs' Interrogatories | | | |
| 586 | 6/24/2022 | Responses of Defendant Kohlberg Ventures to Plaintiffs' Interrogatories | | | |
| 587 | 6/24/2022 | Responses of Defendant Raj Kaji to Plaintiffs' Interrogatories | | | |
| 588 | 7/13/2022 | Responses of Defendant Akademos, Inc. to Plaintiffs' Interrogatories | | | |
| 589 | 7/19/2022 | Plaintiff Alan Jacobs's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 590 | 7/19/2022 | Plaintiff Alan Jacobs's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 591 | 7/19/2022 | Plaintiff Brian Jacobs's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 592 | 7/19/2022 | Plaintiff Brian Jacobs's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 593 | 7/19/2022 | Plaintiff Dale Kutnick's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 594 | 7/19/2022 | Plaintiff Dale Kutnick's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 595 | 7/19/2022 | Plaintiff Dale Kutnick's Supplemental Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 596 | 7/19/2022 | Plaintiff Dale Kutnick's Supplemental Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 597 | 7/19/2022 | Plaintiff Edward B Roberts's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 598 | 7/19/2022 | Plaintiff Edward B. Roberts's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 599 | 7/19/2022 | Plaintiff Jean-Louis Velaise's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 600 | 7/19/2022 | Plaintiff Jean-Louis Velaise's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 601 | 7/19/2022 | Plaintiff Joan Rubin's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 602 | 7/19/2022 | Plaintiff Joan Rubin's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 603 | 7/19/2022 | Plaintiff John Dennis's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 604 | 7/19/2022 | Plaintiff John Dennis's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 605 | 7/19/2022 | Plaintiff Shlomo Bakhash's Responses and Objections to Defendants' First Requests for Production of Documents | | | |

| Proposed JX# | Date | Filename | Bates Begin | Bates End | Deposition Exhibit |
|---|---|---|---|---|---|
| 606 | 7/19/2022 | Plaintiff Shlomo Bakhash's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 607 | 7/19/2022 | Plaintiff The Bernard B. And Sara Jacobs Family Trust's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 608 | 7/19/2022 | Plaintiff The Bernard B. And Sara Jacobs Trust's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 609 | 7/19/2022 | Plaintiff Toren Kutnick's Responses and Objections to Defendants' First Requests for Production of Documents | | | |
| 610 | 7/19/2022 | Plaintiff Toren Kutnick's Responses and Objections to Defendants' First Set of Interrogatories | | | |
| 611 | 2/28/2023 | Deposition of Joe Daly taken February 28, 2023, including exhibits | | | |
| 612 | 3/8/2023 | Deposition of Bill Youstra taken March 8, 2023, including exhibits | | | |
| 613 | 3/10/2023 | Deposition of Jim Kohlberg taken March 10, 2023, including exhibits | | | |
| 614 | 3/13/2023 | Deposition of Gary Shapiro taken March 13, 2023, including exhibits | | | |
| 615 | 3/17/2023 | Deposition of John Eastburn taken March 17, 2023, including exhibits | | | |
| 616 | 3/23/2023 | Deposition of Burck Smith taken March 23, 2023, including exhibits | | | |
| 617 | 4/12/2023 | Deposition of Dale Kutnick taken April 12, 2023, including exhibits | | | |
| 618 | 4/17/2023 | Deposition of Luca Paindelli taken April 17, 2023, including exhibits | | | |
| 619 | 4/17/2023 | Deposition of Jean Louis Velaise taken April 17, 2023, including exhibits | | | |
| 620 | 4/21/2023 | Deposition of Raj Kaji taken April 21, 2023, including exhibits | | | |
| 621 | 5/9/2023 | Deposition of Brian Jacobs taken May 9, 2023, including exhibits | | | |
| 622 | 8/31/2023 | Deposition of Jesse Ultz taken August 31, 2023, including exhibits | | | |
| 623 | 9/7/2023 | Deposition of David G. Clarke scheduled for September 7, 2023, including exhibits | | | |

**Exhibit 4**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      )
                               )
                               )      **2:11-cr-234**
        v.                     )
                               )
JAMES LIGNELLI,                )
                Defendant.     )

## MEMORANDUM ORDER

During the ongoing criminal jury trial, counsel have engaged in several lengthy sidebar disputes regarding the admissibility of an appraisal report performed on the Perry Highway building by James Muri (the "Muri Appraisal"). Apparently, the Muri Appraisal report was prepared for and maintained by S & T Bank in its loan file. The document was produced by the government to Defendant shortly before trial. Defendant seeks to admit this appraisal document into evidence at trial and the government objects.

The government contends that the appraisal document contains hearsay expert opinions. In addition, the Assistant United States Attorney ("AUSA") argues that he has relied on this Court's Memorandum Order of May 21, 2014, which granted the government's motion to preclude Defendant from calling expert witnesses for which it had not provided appropriate notice. The AUSA contends that he has been prejudiced by Defendant's failure to disclose the Muri Appraisal, which he characterizes as an "expert report," prior to trial.

The Court adheres to its May 21st ruling. Defendant may not present Mr. Muri as an expert witness at trial to proffer opinion testimony to the jury. However, the admissibility of the Muri Appraisal document was not at issue in that ruling. The government never specifically

identified or referenced that document, or filed a motion to preclude its admissibility.[1]  Indeed, the Court was unaware of the existence of the Muri Appraisal until after the trial began.  Thus, the Court must determine, separately, whether the document itself is admissible.

Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for "business records," i.e., documents kept in the course of regularly conducted business activities.  Rule 803(6) explicitly states that such memoranda, reports and data compilations may contain "opinions."  Such documents are admissible if they are contemporaneous in time, made by a person with knowledge, and it was the regular practice of that business activity to make that type of report.  To exclude such a document from evidence, pursuant to Rule 803(6), the opponent must show that the source of information or the circumstances of its preparation indicate a "lack of trustworthiness."  In *United States v. Licavoli*, 604 F.2d 613, 622 (9th Cir. 1979) (expert appraisal report admitted as business record), the Court explained that there are "circumstantial guarantees of trustworthiness in a record contemporaneously prepared by one who acts under a business duty of care and accuracy, particularly when the business entity for which the record is made relies on it."

As in *Licavoli*, the Muri Appraisal report appears to comport with Rule 803(6).  Apparently, it was performed contemporaneously by a business professional for S & T Bank, rather than for purposes of this litigation.  Testimony has been proffered that the obtaining and reliance on such reports is a regular part of the activities of a bank or lending institution.  The government has not shown any indicia of untrustworthiness of the Muri Appraisal and its S & T

---

[1] Defendant did file a motion in limine to preclude the government from using a similar appraisal, the Frederick Appraisal, which was performed on the Brodhead Road property.  The Court denied the motion and explained that the Frederick Appraisal report was probative and admissible.  The Frederick Appraisal has been admitted into evidence.

witness appears to have relied on it.[2]  Accordingly, assuming that Defendant can establish an

appropriate foundation of authenticity – either through an S & T Bank representative or Mr. Muri

himself – the document and the facts therein will be admissible.


Conclusion

Counsel are admonished that the lengthy sidebars have disrupted the orderly and efficient

flow of the trial.  This issue could, and should, have been raised in advance of trial or prior to the

trial day at 8:30 a.m., as provided in the Trial Scheduling Order.  The Court will not indulge

continued lengthy sidebar conferences – counsel are instructed to raise any other anticipated

evidentiary issues in advance and out of the hearing of the jury.

SO ORDERED, this 6th day of June, 2014.



BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge




cc:  **Paul D. Boas, Esquire**
       Email: paulboas@choiceonemail.com
       **Steven S. Stallings, Esquire**
       Email: ssstallings@burnswhite.com
       **Brendan T. Conway, AUSA**
       Email: brendan.conway@usdoj.gov

---

[2] The probative value of the Muri Appraisal report is enhanced because the government elicited testimony regarding the subsequent sale of the property by S & T Bank, after its review of the Muri Appraisal.

3