**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| XIN WANG, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 22-943-WCB |
| | § | |
| INJECTIVE LABS INC. and ZHONGHAN | § | |
| "ERIC" CHEN, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## <u>ORDER ON MOTIONS *IN LIMINE*</u>

The parties have filed a number of motions *in limine* (MILs). The plaintiff has filed five such motions, and the defendants have filed seven. This order addresses those motions.

**Plaintiff's MIL No. 1: Motion to Exclude Evidence from Settlement Communications.**

According to the plaintiff, while the parties were exploring possible settlement before this case was filed, Injective's counsel sent an email to Mr. Wang's counsel offering to provide some INJ tokens to Mr. Wang if Mr. Wang would conduct identity verification on a platform known as Synaps. It turned out that Synaps would not accept Mr. Wang's Chinese identification card. Mr. Wang then submitted a Hong Kong identification card ("HKID"), which contained Mr. Wang's name and photograph, but did not include his correct address. Settlement negotiations subsequently broke down, and this action followed. The defendants now want to use the HKID in cross-examining Mr. Wang, to show his character for untruthfulness. *See* Fed. R. Evid. 608(a).

Mr. Wang seeks an order prohibiting the defendants from making such use of the HKID. Mr. Wang argues that using the HKID at trial would violate Rule 408 of the Federal Rules of Evidence, which provides that evidence relating to settlement negotiations is generally not

1

admissible to prove or disprove a claim or impeach a witness with a prior inconsistent statement or by contradiction.  Fed. R. Evid. 408(a).  The Rule provides that such evidence may be admitted for other purposes, such as proving a witness's bias or prejudice.  Fed. R. Evid. 408(b).

The principal policy underlying Rule 408 is to promote the compromise and settlement of disputes.  *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344–46 (3d Cir. 1986).  The use of a false statement made during settlement negotiations to impeach a witness's credibility is akin to the use of a prior inconsistent statement made during settlement negotiations and is therefore likely inadmissible under Rule 408(a).  *See* 2 Mark S. Brodin et al., Weinstein's Federal Evidence § 408.05[2], at 408-23 (2d ed. 2025) (Rule 408 "extends its coverage to all conduct and statements during negotiation.").

Even setting aside the problem of the impeachment use of the conduct at issue in this case, Mr. Wang's use of the HKID in the unusual circumstances of this case is of minimal probative force and would invite a lengthy detour regarding how his use of the HKID came about and why the HKID was used.  Mr. Wang's position is that he was invited by Injective to complete the identification protocol on Synaps but could not do so by using his Chinese identification card.  Instead, he used the HKID.  Mr. Wang contends that the use of the HKID did not reflect dishonesty on his part, but was merely a work-around designed to accommodate Injective's request that he register with the Synaps platform to facilitate the settlement of the case.

Under these circumstances, I will grant the motion *in limine* and prohibit the defendants from cross-examining Mr. Wang with regard to the HKID.  Doing so is consistent with the general purposes of Rule 408.  Moreover, the evidence is of limited probative value, and it would likely result in a battle over the extent to which Mr. Wang would be permitted to explain the use of the HKID even though his explanation would reveal the existence and some of the details of the pre-

2

suit settlement negotiations.  Such evidence, in turn, could lead to jury speculation about the force of Mr. Wang's claims.  The motion is GRANTED.

**Plaintiff's MIL No. 2:  Motion to Exclude Undisclosed Defense Theories.**

In the complaint that Injective filed at the outset of this case, Injective alleged that Mr. Wang breached the Consulting Agreement because he "did no work" and "publicly threaten[ed] and disparage[d] INJ and its founders."  Dkt. No. 1 at ¶¶ 29, 33.   Mr. Wang contends that the defendants did not raise three other affirmative defenses until their motion for summary judgment: (1) the allegation that Mr. Wang breached the confidentiality section of the Consulting Agreement by disclosing Injective's valuation and the terms of his Consulting Agreement; (2) the allegation that Mr. Wang breached Section 6.4 of the Consulting Agreement by reselling his allocation of Advisor tokens; and (3) the allegation that Mr. Wang breached Section 2 of the Consulting Agreement by reselling his Advisor tokens.  As a result, Mr. Wang contends, Injective should be barred from raising any of those defenses at trial.

This issue was raised in the parties' briefing of the defendants' summary judgment motion and was addressed in the court's order on that motion.  *See* Dkt. No. 222 at 11–12 n.4.  The court there noted that Mr. Wang had argued that the defendants' failure to plead its affirmative defenses resulted in a waiver of those defenses.  The court rejected that argument on the ground that Mr. Wang had failed to show that he was prejudiced by the delay in raising the defense of prior material breach.  *Id.*  The court noted that the issue of prior material breach "has been a central dispute in this case since the outset," and denied Mr. Wang's argument that Injective should be barred from raising its affirmative defenses.  *Id.*

The court's ruling in its summary judgment order rejecting Mr. Wang's argument that the defendants are barred from raising issues of prior material breach because several of those issues

3

were not raised before summary judgment is law of the case.  *See Hayman Cash Reg. Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) ("Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances.").  Mr. Wang's argument is the same now as it was on summary judgment, and the court rejected that argument based on Mr. Wang's failure to show that he was prejudiced by the delay in disclosing all of those defenses.[1]

In any event, as the defendants assert, as early as March 2024, well in advance of the summary judgment briefing, the defendants raised the claim that Mr. Wang breached the Consulting Agreement by selling his Advisor tokens.  Dkt. No. 64 at 2 ("The Consulting Agreement also restricts Defendant's ability to dispose of INJ Tokens received thereunder, which Defendant likewise violated.").  And Mr. Wang has not offered any further argument as to why he was prejudiced by the later disclosure of the other affirmative defenses.  Mr. Wang has therefore failed to show that there is a reason for the court to revisit that issue at this time.  The motion is DENIED.

**Plaintiff's MIL No. 3:  Motion to Exclude Evidence Regarding Pre-Contract Conduct.**

The plaintiff argues that the defendants should not be allowed to rely on pre-contract conduct by Mr. Wang as a basis for contending that he breached forward-looking obligations under the contract.  Pre-contract evidence, however, will not be used for that purpose.  Instead, the defendants contend that the pre-contract evidence will be used to show that Mr. Wang breached certain representations and warranties in the Consulting Agreement with Injective, i.e., his

---

[1] While a trial court of course has the authority to reconsider one of its prior rulings, there is a presumption against reconsideration.  *See* 18B Charles Alan Wright et al., Federal Practice and Procedure § 4478.1 at 659–60 (3d ed. 2019).  In this case that presumption has not been overcome.

representations that he had "no pre-existing obligations or commitments (and will not assume or otherwise undertake any obligations or commitments) that would be in conflict or inconsistent with or that would hinder [his] performance of [his] obligations under this Agreement." Consulting Agreement § 6.1.  To establish that Mr. Wang had such "pre-existing obligations or commitments" requires evidence of preexisting conduct and evidence predating the execution of the contractual agreement.

More broadly, the defendants argue that evidence relating to Mr. Wang's pre-contract activities, such as the sale opportunities and relationships that he developed prior to entering into the Consulting Agreement, is relevant to his conduct following the execution of the Agreement. Whether that evidence will contribute materially to the defendants' claim of material breach by Mr. Wang remains to be seen, but it would be unjustified to bar the defendants from exploring that issue at trial by a wholesale bar on the introduction of pre-contract activities by Mr. Wang.  The motion is DENIED.

**Plaintiff's MIL No. 4:  Motion to Exclude Evidence of the Value of the Plaintiff's Work under the Consulting Agreement.**

Mr. Wang next moves for an order barring the defendants from offering evidence relating to the value conferred by Mr. Wang's work pursuant to the Consulting Agreement.  His argument is that even if his efforts were not as productive as the defendants may have hoped, that does not constitute a breach of his obligations under the Consulting Agreement.

That argument is unconvincing.  Whether Mr. Wang did any valuable work as a consultant to Injective is relevant to whether he made a good faith effort to comply with his obligations under the contract, including his obligation to "make introductions to and assist in the acquisition of customers, strategic partners and key industry contacts and facilitate and attend meetings with such

5

potential customers, partners, and key contacts."  Consulting Agreement Exh. A § 1.I.  The motion is DENIED.

**Plaintiff's MIL No. 5:    Motion to Preclude Defendants' Expert from Offering Previously Undisclosed Opinions.**

In this motion, Mr. Wang expresses concern that the defendants' expert, Dr. Franck Risler, will depart from the valuation opinions expressed in his expert report and seek to express new, contradictory opinions on that subject at trial.

Experts are not permitted to depart from their expert opinions during their trial testimony, and Dr. Risler will be confined in this case to the opinions he expressed in his expert report.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (An expert witness's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."); *Coal. to Save Our Child. v. State Bd. of Educ. of State of Del.*, 90 F.3d 752, 775–76 (3d Cir. 1996).  While the parties disagree about whether Dr. Risler is expected to present trial testimony that will depart from his expert report, he will be required to testify in a manner that is materially consistent with the disclosures in his expert report and does not exceed the scope of that report.[2]  If there are disputes as to whether particular portions of Dr. Risler's trial testimony materially departs from positions he took in his expert report, the court will entertain objections to his testimony at that time.

---

[2] As the courts of this district have explained, "In determining whether an expert's testimony has exceeded the scope of his or her report, the Court has not required verbatim consistency with the report, but has allowed testimony which is consistent with the report and is a reasonable synthesis and/or elaboration of the opinions contained in the expert's report." *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, No. 19-1727, 2023 WL 4999938, at *1 (D. Del. Aug. 4, 2023) (quoting *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 585 F. Supp. 2d 568, 581 (D. Del. 2008) (When determining whether an expert's testimony is beyond the scope of the expert's report, courts do not require "verbatim consistency with the report, but . . . allow[] testimony which is consistent with the report and a reasonable synthesis and/or elaboration of the opinions contained in the expert's report.")).

Because it appears possible that the parties will be in conflict on that issue, the court directs the parties to meet and confer prior to trial to identify with specificity what testimony Dr. Risler is expected to give that, in Mr. Wang's view, departs from his report. Prior to trial, by 3 p.m. on Saturday, February 7, 2026, the parties are directed to inform me by email of what Dr. Risler is expected to say at trial that Mr. Wang regards as unsupported by his expert report. The motion is granted to the extent that Dr. Risler will not be permitted to provide testimony that materially departs from, or is in conflict with his expert report. The motion is GRANTED.

**Defendants' MIL No. 1:  Motion to Exclude Evidence of Mr. Wang's "Implied Right or Inquiry into Free Tokens."**

The defendants ask the court to exclude from trial any evidence of Mr. Wang's "implied right to or inquiry about receiving free tokens." Because the court has held that Mr. Wang was not entitled to "free" tokens, the defendants argue that "[a]ny communication by Mr. Wang that does not amount to an offer to purchase tokens is irrelevant and should not be admissible at trial." The defendants contend that any such evidence should be excluded because "jurors could incorrectly assume that a request for or communications regarding free tokens is akin to an offer to purchase even though they are legally distinct."

The plaintiff responds that he will not argue or present evidence to show that he is entitled to receive tokens for free under the Consulting Agreement. However, the plaintiff notes that the court in its summary judgment order noted that the Consulting Agreement does not provide a purchase price for the tokens and that the question of price would be put to the jury. One possibility, as noted in the court's summary judgment opinion, is that the jury could conclude from all the circumstances that the price for the promised tokens was understood to be nominal. Evidence of the parties' interactions and discussions regarding the availability of the tokens is

7

therefore relevant both to whether Mr. Wang was requesting the tokens and what price the parties attached to the prospective purchase of the tokens.  The motion is DENIED.

**Defendants' MIL No. 2:  Motion to Exclude Evidence or Argument that the Option to Purchase Tokens Remains Open Today**

This motion was resolved at the pretrial conference.  The motion is therefore MOOT.

**Defendants' MIL No. 3:  Motion to Exclude Irrelevant Wealth-Related Evidence.**

By its terms, the defendants' motion is unexceptionable.  Irrelevant evidence of any sort is not admissible.  However, that is not to say that all evidence relating to wealth is inadmissible.  I have already ruled on some issues relating to the wealth of Mr. Chen, some of which has been admitted and some excluded.  To the extent that the issue arises at trial, I will not allow Mr. Wang to introduce evidence of Mr. Chen's (or Injective's) wealth unless it is relevant to a genuine issue in the case.  The defendants have expressed concern that evidence suggesting a disparity in wealth between Mr. Wang and Mr. Chen will give rise to a risk that the jury will favor Mr. Wang for that reason alone.  For that reason, the parties should be cautious about offering evidence relating to the parties' wealth.  I will be alert to that issue as well.  With that understanding, the motion is GRANTED.

**Defendants' MIL No. 4:  Motion to Preclude Plaintiff from Contending that He Does Not Understand English.**

This motion has been resolved.  It is therefore MOOT.

**Defendants' MIL No. 5:  Motion to Exclude the Value of Tokens on Irrelevant Dates.**

The defendants argue that the court should exclude evidence of the value of INJ tokens on any date other than the dates on which Mr. Wang first requested that Injective procure the right for him to purchase tokens pursuant to the Consulting Agreement or dates on which Injective refused

8

to permit Mr. Wang to make that purchase.  In particular, the defendants object to Mr. Wang's intention to offer evidence of the tokens' value on June 20, 2021; July 20, 2021; and August 31, 2021.

The value of INJ tokens across a broad spectrum of dates is relevant because I have determined that it is for the jury to determine whether the defendants breached the Consulting Agreement and, if so, when that breach occurred.  Those possible dates are not limited to the three dates identified by the defendants.  Nor is there any reason to believe that evidence of the value of the tokens throughout the relevant period will be more prejudicial than the evidence of the price of INJ tokens on the three days identified by the defendants.  The motion is DENIED.

**Defendants' MIL No. 6:  Motion to Preclude Testimony of Defense Counsel**

This motion relates to the issue of the prospective use of the HKID in the cross-examination of Mr. Wang.  Because I have excluded that evidence from use for that purpose, there is no need to address Mr. Wang's contention that testimony from Mr. Palley relating to that issue should be barred.  The motion is therefore MOOT.

**Defendants' MIL No. 7:  Motion to Preclude Cross-Examination Beyond the Scope of Direct Examination.**

The defendants argue that the court should not allow the plaintiff to conduct cross-examination that goes beyond the scope of any witness's direct examination.  This issue is governed by Federal Rule of Evidence 611(b).  That rule provides that cross-examination "should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."  However, the second sentence of Rule 611(b) provides as follows:  "The court may allow inquiry into additional matters as if on direct examination."  Fed. R. Evid. 611(b).  I will apply Rule 611(b) by its terms, limiting cross-examination to the scope of the direct examination

9

unless I determine in a particular instance that inquiry into additional matters is justified. With that understanding, the motion is GRANTED.

IT IS SO ORDERED.

SIGNED this 5th day of February, 2026.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

10